838 So.2d 860 (2003)
Harry A. LEBLANC
v.
W.J. TRAPPEY, Sr., et al.
No. 02-1103.
Court of Appeal of Louisiana, Third Circuit.
February 5, 2003.
Writs Denied May 2, 2003.
*861 Louis R. Koerner, Jr., Koerner Law Firm, Kenneth W. Jacques, Law Office of Kenneth W. Jacques, New Orleans, LA, for Plaintiff/Appellant, Harry A. Leblanc.
William A. Repaske, Edward P. Landry, Landry & Watkins, New Iberia, LA, for Defendants/Appellees, W.J. Trappey, Sr., Continental Insurance Company.
Mary M. Hamilton, Voorhies & Labbe, Lafayette, LA, for Defendant/Appellee, State of Louisiana through the Department of Transportation & Development.
Paul A. Holmes, Baton Rouge, LA, for Defendant/Appellee, City of New Iberia.
Court composed of JOHN D. SAUNDERS, BILLIE COLOMBARO WOODARD, and ELIZABETH A. PICKETT, Judges.
WOODARD, Judge.
Mr. Harry A. Leblanc appeals from the trial court's grant of a partial summary judgment, which declared that Mr. W.J. Trappey, Sr. cannot be held liable for a tree on his property, which allegedly caused the automobile accident between Mr. Leblanc and Ms. Chantel Martin. This was based on the trial court's determination that Mr. Trappey did not have a duty, concerning the tree.
We find that there remains a genuine issue of material fact regarding this issue. Therefore, we reverse the judgment and remand.

* * * * *
This case arises out of an automobile accident in New Iberia, Louisiana, in 1996. When Ms. Martin crossed over into the on-coming lane of traffic on Parkview Drive in order to avoid a fallen tree branch or branches, blocking her own lane, she collided with Mr. Leblanc's vehicle. Injuries resulted. Mr. Leblanc and Ms. Martin settled, but Mr. Leblanc brought suit against Trappey, the owner of the property on which the tree was situated. However, although some of the branches or even *862 some of the roots may have extended onto Mr. Trappey's private property, at least, most of the tree was in a right-of-way that Mr. Trappey's ancestors-in-title had granted to the State of Louisiana.
Accordingly, Mr. Leblanc amended his petition to include the State, through the Department of Transportation and Development (DOTD), as well as the City of New Iberia (City), as Defendants and joint tortfeasors with Mr. Trappey in this suit. However, he did not add these two Defendants until well after one year had passed since the date of the accident. Consequently, the potential problem that he faces is that his claims against them have prescribed because if Mr. Trappey has no liability, he cannot be a joint tortfeasor, and Mr. Leblanc's suit against him did not interrupt prescription against the added Defendants.[1]

PROCEDURAL HISTORY
DOTD and the City filed exceptions of prescription. Mr. Leblanc filed a motion for partial summary judgment against all three Defendants, concerning liability. DOTD filed a cross-motion for partial summary judgment, asking the court to rule that Mr. Trappey could not have any liability because he did not have a duty. The trial court denied Mr. Leblanc's motion against DOTD and the City but granted it against Mr. Trappey, based on a stipulation that he had entered into, admitting that he was 1% at fault. However, the trial court determined that the stipulation had no effect on any other issues relevant to the other parties, including prescription. Since Mr. Leblanc did not assign this as error on appeal, nor did he designate the stipulation as part of the record on appeal, we will not address it.
The trial court, also, granted DOTD's motion for partial summary judgment, finding that Mr. Trappey had no duty and, therefore, could not be liable to Mr. Leblanc. Mr. Leblanc appealed that judgment, as well as the court's denial of his own motion for summary judgment against DOTD and the City. DOTD moved to dismiss Mr. Leblanc's appeal of the denial of summary judgments, since the denial is, neither, a final appealable judgment nor can it be designated as appealable.[2] This court granted DOTD's motion, dismissing the appeal of the denial of summary judgments.[3] Therefore, the only issue before us is Mr. Leblanc's appeal of the trial court's grant of partial summary judgment to DOTD, based on its finding that Mr. Trappey could not be found liable because he had no duty.
The trial court designated this as a final appealable judgment because it is dispositive of the issue of prescription and, therefore, could dispose of the entire case. Thus, we must determine whether there is any genuine issue of material fact, concerning whether Mr. Trappey had a duty for the tree that allegedly caused the accident between Mr. Leblanc and Ms. Martin.

DUTY
"A defendant's duty to conform his conduct to a specific standard may be express or implied, either statutorily or jurisprudentially."[4] Mr. Leblanc cites multiple statutes to support his allegation that Mr. Trappey had a duty. We find only one of these to be applicable in the case sub *863 judice; namely, La.Civ.Code art. 2317.1, which provides, in pertinent part:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.
Thus, absent the right-of-way agreement, this article clearly imposes an affirmative duty on Mr. Trappey. However, jurisprudence reveals that the owner of a thing is not always its custodian.[5] To determine whether this article imposes a duty on Mr. Trappey, we must ascertain whether he had custody or garde of the tree. "The garde is the obligation imposed by law on the proprietor of a thing, or on one who avails himself of it, to prevent it from causing damage to others."[6] Our supreme court in Dupree,[7] recently reviewed the notion of garde, stating:
The fault of the custodian is based upon his failure to prevent the thing under his garde from causing an unreasonable risk of injury to others. Rather than the loss falling upon some innocent third person, the loss resulting from the creation of the risk falls upon the person to whom society allots its garde. The rationale is the custodian is in a better position than the innocent victim to detect, evaluate, and take steps to eliminate an unreasonable risk of harm which arises from the thing.
The problem in determining garde in the instant case is that, while Mr. Trappey owned the property, in question, the DOTD had a right-of-way on the section on which the tree was situated. Thus, questions arise concerning whose responsibility it was to maintain the right-of-way section of the property and who had the right to remove the tree. Mr. Trappey's ownership of the land creates a presumption that he had garde of the tree on it.[8] This must be rebutted by proof that he did not have supervision or control over it.[9] DOTD argues that the right-of-way, which Mr. Trappey's ancestors-in-title granted, constitutes such proof.
The grant of a right-of-way is "[a] predial servitude, which is a charge on a servient estate for the benefit of a dominant estate."[10] This simply means that the DOTD's right-of-way, the dominant estate, benefits from the burden on Mr. Trappey's property, the servient estate. Codal law dictates that doubts as to the extent of a predial servitude are to be resolved in favor of the servient estate.[11] Therefore, doubts about garde of things on the right-of-way should be resolved in Mr. Trappey's favor, preserving his garde of them. However, since this is a conventional predial servitude, meaning that it was established by contract, the terms of that contract override any statutory provision.[12] Thus, we turn to an analysis of the agreement which granted the right-of-way.

*864 Grant of right-of-way

The servitude agreement governs the DOTD's rights to the servitude.[13] The agreement, at issue, gives to the State:
"a right of way or servitude for the construction, improvement and maintenance of the aforesaid highway for the full distance along, over and across our respective lands, subject to the following conditions:
. . . .
(4) The Department of Highways of the State of Louisiana, its Engineers, Agents and/or Contractors shall remove from the right of way hereby conveyed, all buildings and/or improvements, together with their appurtenances, and relocate said buildings and/or improvements, together with their appurtenances, on the remaining lands of the owner or owners of the said building and/or improvements, all as proscribed and/or designated by the District Engineer of the said Department.

(5) It is further expressly understood and agreed between the parties hereto that the right of way herein granted is solely for the purpose set out in the preceding paragraph and is a conveyance of a servitude across the lands hereinabove described but not a conveyance of the full title thereto, and the Grantors by these presents especially do not transfer any right to oil, gas and other minerals lying beneath the area herein subjected to said servitude for right of way purposes, it being specifically understood, however, that while no exploration, drilling, nor mining of gas, oil or other minerals of any kind shall be conducted upon the area covered by said servitude of right of way, there may be directional drilling from adjoining lands to extract the oil, gas or other minerals from under the area subject to said servitude.
(Emphasis added.)
DOTD argues that the tree is an "improvement." Therefore, the agreement transfers garde of the tree to it. We agree that the tree is an improvement. While this term is not specifically defined in the contract, we must give it its plain, ordinary, and popular meaning.[14] Generally, its prevailing meaning includes landscaping, which encompasses trees. Our conclusion is supported by the implied definition given to improvements within our civil code. Specifically, La.Civ.Code art. 493, which is entitled "Ownership of improvements," applies to "buildings, other constructions permanently attached to the ground, and plantings made on the land[.]" (Emphasis added.)
Notwithstanding our determination that the tree is an improvement under the contract, we cannot agree that the contract unambiguously transfers complete garde of it to DOTD. Our supreme court stated that:
[I]t is clear that more than one party may have custody or garde of a thing under La. Civ.Code art. 2317, determined by an examination of the parties' actions and relationships to the thing causing the injury.[15]
The contract is ambiguous regarding whether Mr. Trappey shared any garde of the tree with DOTD. While DOTD certainly had the right to remove the tree, it is not clear from the language of the contract *865 that it held the exclusive right to remove it. We recognize that had it decided to remove it, Mr. Trappey could not have prevented them from doing so, and the only right he would have in this regard, is that, theoretically, he would be entitled to possession of the tree, once removed. However, if he had decided that he wanted the tree removed because, for example, he felt it presented a danger, because it was blocking the sunlight to his office, or just because he did not find it aesthetically pleasing, we see nothing in the contract that prohibited him from removing it, himself, or having another remove it.
Moreover, his own testimony establishes that he was on the property, at least, five days of the week and that he had noticed the tree's condition. In fact, he had "looked at it and wondered how long it would stay up." While he did not assume that he was responsible for it, apparently, he did think that his permission might be required in order to cut it down. He stated:
I mean, looking at the tree three (3) or four (4) times a day and seeing what condition is the tree, I suspected one day somebody's going to come knock on the door and say, "Can we come and cut this thing out? It's not on our property." I guess that's what I thought.
Thus, apparently, even Mr. Trappey was confused about whether he had any garde of the tree. Clearly, then, garde is a disputed issue of material fact, which should have precluded summary judgment.
The trial court held that La.R.S. 48:268 prohibited him from doing anything about the tree, and consequently, he had no duty, as a matter of law. We disagree with the trial court that this statute is dispositive. It provides:
The felling, topping, or pruning of trees or shrubs to accommodate, operate, or maintain any installation on the right of way, without the prior written approval of the secretary or his representative, is prohibited. The secretary may use his discretion in the granting of this approval.
This statute is expressly limited in its scope "to accommodate, operate, or maintain any installation on the right of way." It does not encompass the general maintenance of the property. Examples of "installations," embodied in this statutory scheme, are found within the subheading "Utilities and facilities" and include signs, conduits, cables, and electric lines.[16] This suggests the statute contemplates that parties, who have joint use agreements of the servitude on the property must get DOTD's permission. However, it does not necessarily apply to the landowner, who has retained any rights not specifically delineated in the servitude agreement.[17]
Therefore, the analysis only leads us back to the actual terms of the servitude agreement. The extent to which the parties intended for Mr. Trappey to relinquish control over the property, subject to the right-of-way, is unclear. This is a highly fact driven determination.[18] Accordingly, it is rarely one to be made in a summary judgment proceeding.[19] The instant case is no exception. We reverse.

CONCLUSION
Mr. Leblanc's duty in this case depends on whether he had any garde of the tree, in question. Since that issue is an intensely *866 factual one, based on intent, we find that it was inappropriately decided on summary judgment. Therefore, we reverse the judgment and remand for a full trial, assigning costs of this appeal to DOTD.
REVERSED AND REMANDED.
PICKETT, J., concurs.
NOTES
[1] See La.Civ.Code art. 2324(C).
[2] In re S.S. v. State, 00-953 (La.App. 3 Cir. 9/20/00); 771 So.2d 187.
[3] LeBlanc v. Trappey, 02-510 (La.App. 3 Cir. 10/16/02), 829 So.2d 671, an unpublished opinion.
[4] Porteous v. St. Ann's Café & Deli, 97-837 p. 5 (La.5/29/98); 713 So.2d 454, 457.
[5] Dupree v. City of New Orleans, 99-3651 (La.8/31/00); 765 So.2d 1002.
[6] King v. Louviere, 543 So.2d 1327, 1329 (La. 1989).
[7] Dupree, 765 So.2d at 1008-9.
[8] Id.
[9] Id.
[10] La.Civ.Code art. 646.
[11] La.Civ.Code art. 730.
[12] La.Civ.Code art. 697.
[13] Id.
[14] La.Civ.Code art.2047.
[15] Dupree, 765 So.2d at 1009.
[16] See La.R.S. 48:381.
[17] See La.Civ.Code art. 730.
[18] Id. Dupree, 765 So.2d 1002.
[19] Touchet v. Estate of Bass, 94-1159 (La. App. 3 Cir. 3/22/95); 653 So.2d 83, writ denied, 95-1020 (La.6/2/95); 654 So.2d 1112.