859 So.2d 758 (2003)
Melanie GALLINA, Individually, and as the Natural Tutrix of Her Minor Child, Devin Michael Gallina
v.
HERO LANDS CO., ABC Insurance Company and XYZ Corporation.
No. 2003-CA-0331.
Court of Appeal of Louisiana, Fourth Circuit.
October 7, 2003.
*759 John E. Sudderth, John E. Sudderth, P.L.C., Harvey, LA, for Plaintiff/Appellant.
Michael D. Fisse, Patrick E. Moore, Daigle Fisse, PLC, Covington, LA, for Defendant/Appellee, Hero Lands Co.
Kenneth P. Carter, Joseph K. West, Endya E. Delpit, New Orleans, LA, for Defendant/Appellee, Entergy Louisiana, Inc.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge JAMES F. McKAY, III, Judge DAVID S. GORBATY).
PATRICIA RIVET MURRAY, Judge.
This is a personal injury suit arising out of a horseback riding accident. From separate judgments dismissing one defendant, *760 Hero Lands Co., on summary judgment, and another defendant, Entergy Louisiana, Inc. (formerly Louisiana Power & Light ["LP & L"]), on a prescription exception, the plaintiffs, the Gallinas, appeal. For the reasons that follow, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND
On February 13, 2000, Devin Michael Gallina, Melanie Gallina's minor child, was injured when the horse he was riding collided with Entergy's utility pole support wire located on Hero Lands' property. It is undisputed that the pole is located on the right of way that Hero Lands granted to Entergy's predecessor, LP & L, in 1957.
According to the petition, the accident occurred when Devin Gallina's horse "ran into an unmarked and unprotected steel wire which appears to support a utility pole that [was] situated on the property owned by the defendant, Hero Lands Co." The petition further alleges that "[b]ecause the wire was not marked in any fashion, and because it was unprotected and/or not enclosed in visible plastic or similarmaterial, Devon [sic] Gallina did not see the wire, and did not see it in time to guide his horse away from it, to avoid running into it."[1]
Melanie Gallina, individually and on behalf of her minor child, Devin Gallina filed the original petition on February 13, 2001, the one-year anniversary of the accident. Named as defendants were Hero Lands and two fictitious defendants: ABC Insurance Company, Hero Lands' unknown liability insurer; and XYZ Corporation ("XYZ"), the unknown owner and maintainer of the utility pole. The petition alleged that the sole cause of Devin Gallina's injuries was "the fact that the steel wire was not marked in any fashion, being unprotected and/or not enclosed or wrapped in visible plastic or similar-type material." The petition asserted that Hero Lands and XYZ were jointly and solidarily liable for failing to provide protective measuresi.e., either mark or enclose or wrap in visible plastic or similartype material the steel wire attached to the utility pole.
On June 26, 2001, the Gallinas filed an amending and supplemental petition substituting LP & L (now Entergy) in place of XYZ. Based on the fact that it was not joined within the one-year tort prescriptive period, Entergy responded by asserting a peremptory exception of prescription.
Hero Lands responded by filing a motion for summary judgment, asserting it is not the owner of the utility pole support wire; rather, Entergy placed the pole and wire upon the right of way.[2] In support of its motion, Hero Lands enumerated the following four undisputed facts:
(1) The minor plaintiff was riding horseback at the time of the alleged injury;
(2) The land upon which the minor plaintiff was riding was open and undeveloped;
(3) The utility pole and support wire described in the petition were not placed on the premises by the defendant, Hero.
*761 (4) The utility pole and support wire described in the petition were located upon a right of way granted by Hero to Louisiana Power and Light in 1957.
Hero Lands also offered an affidavit by one of its corporate representatives, Allen Hero. Mr. Hero attested that Hero Lands is not the owner of the steel wire described in the petition, but rather LP & L is the owner and enjoys a right of way through the land. He further attested that LP & L placed the steel wire on the right of way and still owns it and the pole to which it is attached. Still further, he attested that the right of way permit obligates LP & L to pay damage caused by its construction and maintenance of the steel wire and the pole. Hero Lands offered a certified copy of the right of way agreement in support of its motion.
Opposing the motion, the Gallinas offered an affidavit of Melanie Gallina. She attested that the utility pole in question was supported by "an exposed wire, silver in color, approximately one inch in diameter and difficult to observe and see with the naked eye without the usual bright protective covering attached." Photographs of the area and the pole and attached steel wire were attached to her affidavit, and she attested they accurately reflected the area and scene of the accident.
Following a hearing, the trial court granted Hero Lands' summary judgment motion and sustained Entergy's prescription exception. The trial court denied the Gallinas' motion for new trial. This appeal followed.

HERO LANDS' LIABILITY
We deal first with the issue of Hero Lands' liability because it affects the outcome of the prescription issue. As noted, the trial court granted summary judgment dismissing the Gallinas' claims against Hero Lands. It is well-settled that we review a trial court's decision granting summary judgment de novo. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257, p. 7 (La.2/29/00), 755 So.2d 226, 230. When the party seeking summary judgment is the defendant, La. C.C.P. art. 966(C)(2) does not require that the mover negate all the essential elements of the opponent-plaintiff's claim; rather, a defendant can simply establish the absence of factual support for one or more elements. Baker v. Murphy Oil USA, Inc., XXXX-XXXX, p. 4 (La.App. 4 Cir. 4/10/02), 816 So.2d 329, 331 (citing Moody v. City of New Orleans, 99-0708 (La.App. 4 Cir. 9/13/00), 769 So.2d 670, 671). It follows then that once Hero Lands negated a necessary element of the Gallinas' claim, the burden shifted to the Gallinas to produce sufficient factual support to establish that they will be able to prevail on their evidentiary burden of proof at trial.
The Gallinas argue that the trial court erred in finding no material issues of fact as to whether Hero Lands, as landowner and grantor of a right of way, was liable for Devin Gallina's injuries under a negligence or strict liability theory, citing La. C.C. arts. 2316 and 2317.1.[3] Under *762 both theories, the plaintiff is required to prove three elements: (1) the defendant either owned or had care, custody, or control of the thing in question; (2) the thing was a cause-in-fact of the plaintiff's injuries; and (3) the thing presented an unreasonable risk of harm. Baker, XXXX-XXXX at p. 5, 816 So.2d at 332.
It is undisputed that the accident occurred on the portion of Hero Lands' property that is subject to Entergy's right of way. Although there is a presumption that an owner has custody or garde of its property, this presumption is rebuttable. One way to rebut the presumption is by establishing a contractual undertaking by another to maintain and to control the property. When an owner relies on a right of way agreement to rebut the presumption, "the courts look to determine which party, if any, has actual control over the property." Id. Indeed, the courts have recognized that a servitude holder does not have custody or garde absent either a right of dominion or some contractual responsibility for the surface of the servitude. Hartford Accident & Indemnity Co. v. South Central Bell Telephone Co., 497 So.2d 1034,1036 (La.App. 3 Cir.1986).
The courts also have recognized the reality that garde, which is a broader concept than ownership, may be shared; multiple parties may have garde of the same thing. Dupree v. City of New Orleans, 99-3651, p. 7 (La.8/31/00), 765 So.2d 1002, 1009. To determine whether garde is shared, the courts look to the parties' actions and relationships to the thing causing injury. Id. The oft-quoted test for determining custody or garde is two-fold: (1) whether the person bears such a relationship as to have the right of direction or control over the thing, and (2) what, if any, kind of benefit the person derives from the thing." Id. (collecting cases).
In Baker, supra, we applied these principles to determine whether a landowner had any tort liability for an injury that occurred when the plaintiff fell in a ditch on the landowner's property. The ditch was constructed and maintained by the Department of Transportation and Development ("DOTD") on a right of way on the landowner's property. Affirming a summary judgment in favor of the landowner, we found that: (1) the landowner neither had an ownership interest in the ditch, nor any garde, care or control of it; (2) the landowner had no authority to change, redesign, or relocate the ditch; (3) that simply because the landowner may have derived some benefit from the ditch for some runoff from its plant was of no moment; and (4) that the only corrective action required was to place a warning sign for pedestrians and that it was solely DOTD's responsibility to do so. As to the unreasonable risk of harm issue, we reasoned that "[t]he social advantages and public utility of the creation of this drainage canal when compared with the protection of pedestrians from falling into drainage ditches is nonsensical." Baker, XXXX-XXXX at p. 10, 816 So.2d at 334. We thus held that, as a matter of law, the landowner could not be responsible for the damages caused by a defect on DOTD's right of way and that the landowner "simply had no duty to this pedestrian to protect her from this type of injury." Baker, XXXX-XXXX at p. 10, 816 So.2d at 335 (emphasis supplied).
Applying the reasoning in Baker to the facts of this case, the trial court found that *763 Hero Lands, albeit owner of the property, lacked garde of the utility pole support wire, reasoning that "there was no evidence that Hero Lands had any right of direction or control over the power poles placed by Entergy within their right of way" or that it "derived any benefit from them, other than the benefit derived in common with every user of electricity within Entergy's service area." As to the unreasonable risk of harm issue, the trial court found that the social advantages and public utility of power poles and support wires outweighs the risk of harm to the public, "especially when the harm complained of is from the support wires as a hazard rather than the risk of electrocution." It further found that "[t]he social utility of the maintenance of power transmission lines and power poles speaks to finding no liability against Entergy, much less the land owner who's [sic] property is burdened by a right of way for the placement of those poles." Still further, it concluded that it could not find any duty on the part of Hero Lands to the Gallinas to protect them from "this overt and obvious public utility, nor a breach of any supposed duty because of the overt nature of those power poles."
Although the Gallinas concede that the trial court correctly relied upon the legal analysis in Baker, supra, they contend that it incorrectly found that there were no material issues of fact as to the three factors enumerated in Baker. Tailoring those factors to the facts of this case, the Gallinas claim that there are material issues of fact as to: (1) Hero Lands' right of direction and control over the poles Entergy placed within its right of way, (2) Hero Lands' benefit derived from the right of way and placement of poles on its property, and (3) the unreasonable risk of harm issue.
The focal point of this case at the summary judgment stage is whether Hero Lands had the right to direct or control Entergy's poles located on the right of way. As noted, it is uncontested that Hero Lands owns the land where the accident occurred and that in 1957 it granted a right of way to the area in question to Entergy. The Gallinas note that a right of way is a predial servitude and that La. C.C. art. 730 mandates that doubts as to the extent of a predial servitude be resolved in favor of the servient estate. It follows, they contend, that any doubts about custody or garde of things on the right of way should be resolved in favor of Hero Lands having preserved custody or garde in them. They contend that summary judgment was inappropriately granted and cite in support Leblanc v. Trappey, XXXX-XXXX (La.App. 3 Cir. 2/5/03), 838 So.2d 860, writs denied, XXXX-XXXX, XXXX-XXXX (La.5/2/03), 842 So.2d 1107, 1109, which reversed a summary judgment in favor of a landowner based, in part, on a finding of ambiguity in a right of way agreement.
Leblanc was a personal injury suit by a plaintiff-motorist for damages caused by a tree branch located on DOTD's right of way on the defendant-landowner's property. The court found a disputed issue of material fact regarding whether the defendant or the DOTD or both had garde of the tree. The court noted that the defendant's ownership of the land created a presumption of garde of the tree located on that land; however, the presumption was rebuttable by proof that the defendant lacked supervision or control of the tree. In resolving the issue, the court found the contractual right of way agreement controlling as to DOTD's rights to the servitude. Characterizing the contract as ambiguous on the question of whether the defendant and the DOTD shared garde, the court noted that although the DOTD *764 had the right to remove the tree, it was unclear from the contractual language as to whether it had the exclusive right to do so. The court still further noted that the defendant was confused as to whether he had the right to remove the tree. The court also relied upon La. C.C. art. 730, which provides that doubts as to the extent of a predial servitude are to be resolved in favor of the servient estate; translated, the court found that doubts as to garde of a thing on the right of way should be resolved in favor of the landowner "preserving his garde of them." XXXX-XXXX at p. 4, 838 So.2d at 863. The court thus found the disputed issue of material of fact regarding garde precluded summary judgment.
As in Leblanc, the Gallinas argue that summary judgment was improperly granted because there is at least a disputed issue of material fact as to Hero Lands' garde over the area where Entergy's poles are located and Devin Gallina was injured. Stated otherwise, they argue that the right of way agreement does not clearly and unambiguously establish Hero Lands' intent to extinguish all of its rights to the area in question. To the contrary, they cite two provisions of that agreement that evidence Hero Lands' intent to maintain some degree of garde over the area.
First, they cite the provision reserving to Hero Lands the right to use the area, stipulating that "said line and Right of Way shall never be fenced by the Grantee [Entergy] and that the Grantor [Hero Lands] shall have full use of said Right of Way and the right to cultivate and otherwise use said Right of Way ..." This language, they argue, establishes Hero Lands had a right of control over the area where Entergy's poles were located.
Second, they cite the provision providing for relocation of the right of way in the event it is necessary for construction of a railroad line in the curve; it provides that "Grantee [Entergy] hereby agrees to relocate its facilities in curves, if such relocations are necessary, for construction of a railroad line in this area." They read this language as giving Hero Lands the right to force Entergy to relocate the poles in certain areas if Hero Lands deems it necessary.
Taken together, the Gallinas contend that these two provisions reserve to Hero Lands the right to both use the land in question and to control the placement and possible relocation of the poles in the right of way.[4]
Countering, Hero Lands and Entergy contend that the trial court correctly concluded, based on Baker and the terms of the 1957 right of way agreement, that Hero Lands had no right of direction or control over the utility pole support wire. They argue that Leblanc is distinguishable both factually and legally. However, they acknowledge that the Leblanc case is instructive insofar as it directs the court to the language of the right of way agreement in analyzing the issue of control or garde. Finally, Entergy stresses, a finding of garde or control on the part of Hero Lands over Entergy's electric utility pole and its appurtenances would not only be a misinterpretation of the right of way agreement, but also would have far reaching ramifications. Particularly, *765 all Entergy customers who executed such agreements for purposes of facilitating transmission of electricity to their neighborhoods and businesses would be subject to liability exposure whenever Entergy's electrical facilities malfunction or cause damages to people or property.
As Leblanc instructs, we begin our analysis of this issue by turning to the language of the 1957 right of way agreement; it provides that LP & L and its successor, Entergy, are granted the following:
[T]he right, privilege and easement forever to construct, operate and maintain a transmission line, consisting of a single line of poles with such wires, cables and other appurtenances thereto as may be necessary or convenient, for the transmission of electric energy and/or communications, together with a perpetual Right of Way with ten (10) feet in width of the center line of transmission line as constructed as the center thereof, and the right to open, clear and maintain said Right of Way and to keep same clear of underbrush, trees and other obstructions which in the judgment of [Entergy] might interfere with or constitute a hazard to the operation of said transmission line and with the free right of ingress and egress to and from and upon said Right of Way for the purpose of constructing, maintaining, repairing, replacing, operating or removing at will said transmission line and appurtenances thereto upon, over and across the following [described property].
The agreement further provides that:
The Grantee [Entergy] shall also have the right and privilege forever to patrol, alter, inspect, improve, repair, and remove such poles, lines, wires, cables, attachments, equipment and appurtenances, including the right to increase or decrease the number of wires, poles or structures and all other rights and privileges necessary or convenient for the full use and enjoyment of the Right of Way herein granted for the purposes herein described, including the right of ingress and egress to and from said Right of Way over adjoining lands of the Grantor [Hero Lands].
The agreement also contains an indemnification provision, which provides that Entergy "agrees to pay any other damages, not included in the above settlement, which may be inflicted by it in the construction and maintenance of said lines, provided an itemized claim thereof shall be presented by the Grantor [Hero Lands] in writing to the office of the Grantee [Entergy] at Gretna, Louisiana, within thirty days after the damage is done."
We find persuasive Hero Lands' and Entergy's argument that the above language unambiguously provides that Entergy has the exclusive right to control and maintain its electrical poles and the attachments thereto located on the right of way. We further find that neither of the provisions the Gallinas cite as establishing Hero Lands' retention of control support their position. The provision reserving to Hero Lands the right to use the area ends with the following language: "except for the purposes for which the same is herein conveyed to the Grantee [Entergy]."[5] The purpose of the right of way was to permit the construction and maintenance of electrical utility poles and attachments thereto on the property. The latter language reserves to Entergy the exclusive right to *766 direct and to control such activities on the right of way. Clearly, the right of control over the poles, albeit on property Hero Lands owned, belongs exclusively to Entergy. Likewise, we find the unexercised railroad provision inapposite. This case, as Hero Lands points out, is not about the placement of the poles, but rather the maintenance of a particular pole.
We also find the Galliana's reliance on the Leblanc case misplaced. Unlike in Leblanc, as noted above, we find no ambiguity in the 1957 right of way agreement regarding Entergy's exclusive right to maintain and control its electrical poles and attachments thereto located on the right of way. An inherent distinction exists in the nature of the thing at issue in Leblanca treeas opposed to the thing at issue in this caseelectrical utility poles and guy wires. This distinction brings into play the issue raised by Entergy, and expressed by the trial court at the summary judgment hearing, regarding the ramifications that would result if liability were extended to all similarly situated utility customers who exercise these types of right of way agreements.
Like in Baker, in which we found the landowner had no ownership interest in the DOTD's ditch, we find Hero Lands had no ownership interest in Entergy's utility pole support wire. Also like in Baker, in which we found the landowner lacked the authority to change, redesign, or relocate the DOTD's ditch, we find Hero Lands lacked the authority to alter the utility pole support wire. As noted above, although the right of way agreement included a provision regarding relocating the right of way in the event it is necessary to construct a railroad line in this area, that narrow provision does not grant Hero Lands any other right to change, redesign, or relocate Entergy's utility pole support wire.
The only corrective measure that the Gallinas claim should have been taken was, according to the petition, either to mark or to enclose or to wrap in visible plastic or similar-type material the steel wire attached to the utility pole. Pursuant to the right of way agreement, it is clear that Entergy is the only entity to have any responsibility for designing and maintaining the poles. Thus, Entergy is the only one that could have taken these corrective measures.
Addressing a similar issue, we recently affirmed a judgment against Entergy as the sole custodian of a light standard that fell in a hurricane and injured the plaintiff. Joseph v. Entergy, 2000-2213 (La.App. 4 Cir. 2/13/02), 811 So.2d 54, writ denied, XXXX-XXXX (La.5/10/02), 815 So.2d 846. In that case, we rejected Entergy's argument that the trial court erred in dismissing its cross-claim against the landowner, the City of New Orleans. We found that under the terms of the contractual agreements between the City and Entergy it was clear that "Entergy, the only provider of electricity to the city, was the only entity to have any responsibility for the repair and maintenance of the light standards." Joseph, 2000-2213 at p. 4, 811 So.2d at 58. By analogy, we find Entergy was the only entity to have responsibility for the utility pole and guide wire.
For these reasons, we conclude that the trial court did not err in granting summary judgment in favor of Hero Lands.

PRESCRIPTION
Tort actions are governed by a one-year liberative prescription period, which commences to run from the day injury is sustained. La. C.C. art. 3492. Prescription statutes are construed strictly against prescription. Lima v. Schmidt, 595 So.2d 624, 629 (La.1992). The defendant *767 has the burden of proving prescription except when the petition on its face reveals that the claim is prescribed. In this case, Entergy was not added as a defendant until over a year after the accident. As a result, the petition is prescribed on its face, and the burden shifted to the Gallinas to establish that prescription was suspended, interrupted, or renounced.
The Gallinas assert two theories in support of their argument that their claim against Entergy is not prescribed. First, they argue, as alleged in their petition, that Entergy and Hero Lands are joint tortfeasors and that suit against Hero Lands interrupted prescription as to Entergy. La. C.C. art. 2324(C) provides that suit against one joint tortfeasor interrupts prescription against all joint tortfeasors. Yet, "where no liability is found on the part of a timely sued alleged tortfeasor, prescription will not be interrupted as to another tortfeasor, who is not timely sued, since no joint or solidary obligation exists." Morris v. Westside Transit Line, XXXX-XXXX, pp. 6-7 (La.App. 5 Cir. 2/25/03), 841 So.2d 920, 925, writ denied, XXXX-XXXX (La.5/16/03), 843 So.2d 1132. Such is the case here.[6] Although Hero Lands was timely sued, it has been absolved of liability. Prescription thus was not interrupted as to Entergy since no joint or solidary obligation exists.
The Gallinas' other argument is based on the relation back concept codified in La. C.C.P. art. 1153, which provides:
When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original petition.
La. C.C.P. art. 1153. They argue that the amended petition substituting LP & L (Entergy) for XYZ related back to the original petition.
The classic relation-back example is when, as in this case, a plaintiff adds a new defendant; such an amendment will relate back only if the following criteria are satisfied:
(1) the new claim arises out of the same transaction or occurrence set forth in the original pleading;
(2) the new or substituted defendant received such notice of the institution of the action that he would not be prejudiced in maintaining a defense;
(3) the new or substituted defendant knew or should have known that but for a mistake concerning the identity of the proper party defendant, the original action would have been brought against him; and
(4) the substitute defendant is not a wholly new or unrelated defendant.
Frank L. Maraist and Thomas C. Galligan, Louisiana Tort Law § 10-4(k)(1996). (citing Ray v. Alexandria Mall, Through St. Paul Property and Liability Ins., 434 So.2d 1083 (La.1983)).
Finding the Gallinas' reliance on Article 1153 misplaced, the trial court reasoned that the second and third Alexandria Mall criteria, enumerated above, were not satisfied because there was no indication in the record that Entergy was made aware of *768 the original suit or that its exclusion from the original petition was merely an identification mistake. Rather, the court found that naming XYZ in lieu of Entergy as the entity responsible for the power pole support line was "merely an error of omission without excuse." Indeed, the court commented that this was especially true given "Entergy is commonly known to be the electrical provider for the entire area encompassed by this judicial district and is obviously responsible for electric transmission lines and power poles." We find no error in the trial court's conclusion that the Gallinas' amended petition substituting LP & L (Entergy) for XYZ did not relate back.
For these reasons, we thus find Gallinas' argument that the trial court erred in sustaining Entergy's peremptory exception of prescription unpersuasive.

DECREE
For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] Although the caption of the petition spells the minor child's name "Devin," the body of the petition spells it "Devon." For consistency sake, we use the spelling in the caption, "Devin" throughout this opinion.
[2] Alternatively, Hero Lands asserted that the Recreational Use Immunity statutes, La. R.S. 9:2791 and 9:2795, applied; however, the trial court rejected that argument. Although Hero Lands argues this issue in opposition to the Gallinas' appeal, we find it unnecessary to reach it.
[3] As the Gallinas note, the potential theories of Hero Lands' tort liability are negligence under La. C.C. art. 2316, which provides that "[e]very person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or by his want of skill," and strict liability under La. C.C. art. 2317.1, which provides that:

The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.
La. C.C. art. 2317.1. The latter article is actually a form of negligence because it requires proof that the defendant have knowledge of the defect.
[4] The Gallinas further argue that the second prong of the test for determining garde was satisfied because Hero Lands derived benefits from the right of way; namely, it was paid for the right of way, it obtained access to electrical power from the right of way, and it improved its property. Still further, the Gallinas argue that Hero Lands failed to present any evidence showing that there were no issues of material fact as to the remaining element of La. C.C. arts. 2317.1 or 2316 liability, i.e., the unreasonable risk of harm factor.
[5] As noted above, the provision reserving to Hero Lands the right to use the area stipulated that "said line and Right of Way shall never be fenced by the Grantee [Entergy] and that the Grantor [Hero Lands] shall have full use of said Right of Way and the right to cultivate and otherwise use said Right of Way..."
[6] Nor can the Gallinas rely on the naming of XYZ, a fictitious defendant, in the original petition. "Prescription is not interrupted as to an actual defendant when only a fictitious defendant is named in a petition, unless prescription is interrupted by some other means." Hill v. Shell Oil Co., 99-1322, p. 4 (La.App. 5 Cir. 4/25/00), 760 So.2d 511, 512-13; see also Thomas v. Doe, 542 So.2d 740, 741 (La.App. 4 Cir.1989)(citing Bankston v. B & H Air Tools, Inc., 486 So.2d 199, 200 (La. App. 1 Cir.1986)).