| | | |
|---|---|---|
| OTIS JONES | * | NO. 2023-CA-0357 |
| VERSUS | * | |
| | | COURT OF APPEAL |
| WHIPS ELECTRIC, LLC., | * | |
| AFRICK CONSTRUCTION, | | FOURTH CIRCUIT |
| LLC., PARADISE POOLS AND | * | |
| SPAS, INC., AND TREVOR | | STATE OF LOUISIANA |
| REICHMAN | * * * * * * * | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2019-04000, DIVISION "F-14"
Honorable Jennifer M Medley,
* * * * * *
**Judge Rosemary Ledet**
* * * * * *

(Court composed of Judge Daniel L. Dysart, Judge Joy Cossich Lobrano, Judge Rosemary Ledet)

Justin E. Alsterberg
JJC Law
3914 Canal St.
New Orleans, LA 70112

    COUNSEL FOR PLAINTIFF/APPELLANT, OTIS JONES


D. Scott Rainwater
Jared A. Davidson
Derrick A. Jusczak
TAYLOR WELLONS POLITZ & DUHE, APLC
1555 Poydras Street, Suite 2000
New Orleans, LA 70112

    COUNSEL FOR DEFENDANT/APPELLEE, WHIP'S ELECTRIC, LLC

Jack E. Truitt
Michelle Mayne Davis
Kaylin K. Storey
Lou Anne Milliman
THE TRUITT LAW FIRM
149 North New Hampshire Street
Covington, LA 70433

Jennifer Cortes-Johnson
Nancy N. Butcher
CORTES-JOHNSON & BUTCHER, LLC
3900 Causeway Blvd., Suite 1200
Metairie, Louisiana 70002

COUNSEL FOR DEFENDANT/APPELLEE, AFRICK CONSTRUCTION, LLC

**REVERSED AND REMANDED**
**November 15, 2023**

This is a tort suit. Plaintiff—Otis Jones ("Mr. Jones")—appeals the trial court's judgment granting the separate summary judgment motions filed by two defendants—Whips Electric, LLC ("Whip's")[1] and Africk Construction, LLC ("Africk Construction") (collectively "Contractors"). This judgment was the subject of an earlier appeal, which we dismissed for jurisdictional reasons. *Jones v. Whips Elec., LLC.*, 22-0095 (La. App. 4 Cir. 9/16/22), 348 So.3d 849 ("*Whip's I*"). Following the trial court's issuance of an amended judgment, Mr. Jones filed the instant appeal. For the reasons that follow, we reverse and remand.

### FACTUAL AND PROCEDURAL BACKGROUND

In May 2017, Gregory Browne and his wife,[2] while living in Houston, Texas, purchased a house located at 1019 Webster Street in New Orleans, Louisiana (the "Property"). Because the Property needed extensive remodeling

---

[1] Although the petition spells the defendant's name as "Whips Electric, LLC," the defendant's actual name is Whip's Electric, LLC. For ease of discussion, we refer to the defendant as "Whip's" in this opinion.

[2] For ease of discussion, we refer singularly to the couple as "Mr. Browne."

1

work, Mr. Browne did not move there until June 2018. In the interim, extensive remodeling work was begun on the Property.

Mr. Browne divided the remodeling work between two contractors: Africk—run by Nathan Africk—was hired as the general contractor to perform the house, patio, and pool house work;[3] Paradise Pools and Spas, Inc. ("Paradise Pools")—run by Earl Hardouin—was hired as the pool contractor to perform the pool and driveway work. Africk, in turn, hired multiple subcontractors including Whip's—run by Justin Whipple—to perform the electrical work, and Billy Keyes Construction ("Keyes")—run by Billy Keyes—to perform the cement work.

Work on the Property began in December 2017. The accident occurred in May 2018. On the date of the accident, Mr. Jones was working on the Property as a cement finisher for Keyes—a subcontractor of Africk. Mr. Jones was laying and finishing concrete in the patio area. This was Mr. Jones' third day on the job. According to Mr. Jones, he was on his knees finishing concrete when his arm inadvertently touched an exposed electrical wire protruding from a junction box, resulting in an electrical shock. The junction box was located on a pillar that supported the right, rear side of the house; the junction box was located next to the driveway. After the accident, Mr. Keyes called Mr. Africk, who came to the Property. Mr. Africk then called Mr. Whipple and requested that he secure the junction box. Mr. Whipple did so that same day.

---

[3] The scope of work performed by Africk initially included renovating of the kitchen, bathrooms, and the closets; finishing the laundry room; and adding a porch to the rear of the house. The scope was later enlarged to include renovating the former garage into a new pool house.

Subsequently, Mr. Jones filed suit against Contractors and Paradise Pools.[4] He later amended the suit to name Mr. Browne and his homeowners' insurer.[5] In the suit, Mr. Jones alleged that he sustained injuries as a result of the electrical shock and asserted that all the defendants were liable to him based on negligence and premises liability theories.

Following discovery, Contractors separately filed summary judgment motions, contending that Mr. Jones could not prove that they knew or should have known about the wire protruding from the junction box. Contractors supported their summary judgment motions with deposition testimony from Mr. Browne, the homeowner; Mr. Africk, the general contractor; Mr. Whipple, the electrical contractor; Mr. Hardouin, the pool contractor; and Mr. Jones, the plaintiff. Mr. Jones opposed the two motions collectively. In support, he attached much of the same depositions testimony, Africk's contract with Mr. Browne, and Whip's' scheduling documents.

At the December 11, 2020 Zoom hearing, the trial court orally ruled in Contractors' favor. In so doing, the trial court provided the following oral reasons for judgment:

> What I'm inclined to do at this point, I hate to do this to plaintiff but I'm inclined to grant the motion for summary judgment but without prejudice. If during the course of discovery it's determined that there

---

[4] Paradise Pools filed a summary judgment motion, which the trial court denied. Paradise Pools' application for supervisory writ from that ruling was denied by this court in *Jones v. Whips Elec., LLC*, 21-0569 (La. App. 4 Cir. 11/02/21)(*unpub.*), and by the Louisiana Supreme Court in *Jones v. Whips Elec., LLC*, 21-01795 (La. 2/22/22), 333 So.3d 448.

[5] Mr. Browne is no longer a party to this case. The Louisiana Supreme Court granted Mr. Browne's writ application and rendered judgment dismissing, on summary judgment, Mr. Jones' claims against him. *Jones v. Whips Elec., LLC*, 22-01035 (La. 11/22/22), 350 So.3d 846.

was in fact work done in those areas by these parties then you can, because it's without prejudice you can figure out if you want to bring them back in but you have not given me any testimony that verifies the location, just the work done and the work done seems to be within the scope which is inside the property.

Thereafter, Mr. Jones filed a motion for new trial ("MNT"), which was denied. This Court, in *Whip's I*, dismissed Mr. Jones' first appeal for jurisdictional reasons. On remand, the trial court issued an amended judgment, granting Contractors' summary judgment motions and dismissing Contractors from the suit "without prejudice." This second appeal followed.

## DISCUSSION

*Jurisdictional Issue*

An appellate court has a duty to determine—even if the parties do not raise the jurisdictional issue—whether it has subject matter jurisdiction to entertain an appeal. *See Moulton v. Stewart Enters., Inc.*, 17-0243, 17-0244, p. 3 (La. App. 4 Cir. 8/3/17), 226 So.3d 569, 571 (citation omitted). Here, Whip's raises a jurisdictional issue—the timeliness of Mr. Jones' appeal. Whip's contends that Mr. Jones' deadline to appeal the trial court's December 2020 ruling on its summary judgment motion elapsed by the time Mr. Jones filed his MNT in May 2021.[6] Because Mr. Jones filed his MNT untimely, Whip's contends that this

---

[6] According to Whip's, the trial court granted its summary judgment motion following oral argument at the December 11, 2020 Zoom hearing. The approved judgment was filed on January 4, 2021. Thereafter, the trial court signed the judgment on January 15, 2021; and notice of the signing of the judgment was mailed to all parties on January 19, 2021. Therefore, Mr. Jones' deadline for filing a MNT was January 28, 2021. That deadline elapsed without the filing of a MNT. Likewise, an appeal was not filed by the March 29, 2021 deadline.

appeal is untimely. Mr. Jones counters that there is nothing in the record indicating that his MNT was untimely filed.[7]

This is the second appeal from this same trial court ruling, which was made orally in December 2020. In addressing this jurisdiction issue, we take notice of two changes that occurred shortly after the trial court's oral ruling.

First, the identity of the trial court judge changed. As we noted in *Whip's I,* the trial judge—Judge Piper Griffin—was elected to the Louisiana Supreme Court in November 2020. 22-0095, p. 1, n.1, 348 So.3d at 851. Judge Griffin's term on the trial court ended on December 31, 2020; and she did not seek re-election. *Id.*, 22-0095, p. 2, 348 So.3d at 851.[8]

Second, the identity of Mr. Jones' attorney changed. The record reflects that Mr. Jones, before receiving a copy of the written judgment, enrolled a new attorney; the motion to enroll was granted in January 2021. His new attorney

---

[7] In connection with his MNT, Mr. Jones argued that his delay to file the MNT did not begin to run until he received a copy of the judgment, which did not occur until April 2021. In support, he cited the clerk's mailing of the notice of the signing of the judgment to the wrong address. Whip's countered that this argument was misguided and relieved Mr. Jones' counsel of her duty to notify the clerk of any change of address. In support, Whip's cited La. Dist. Court Rules Rule 9.7, which requires that "[e]ach pleading shall be signed by an attorney " and that "[t]he correct mailing address [and] street address . . . of the person signing the pleading . . . shall appear below the signature." Rule 9.7, however, does not provide for any penalty for an attorney's failure to comply with his or her obligation to update their address with the court. In contrast, Rule 7, § 3 of the Rules of First City Court of the City of New Orleans provides:

> Each attorney and self-represented litigant has a continuing obligation to advise the Court, in writing, of any address, telephone number, facsimile number and/or e-mail address change. The failure to do so will bar such attorney or self-represented litigant from pleading the nonreceipt of notice mailed by the Court to his address originally shown on the pleadings.

*See Dooley v. CJ Johnson Home Improvement*, 22-0011 (La. App. 4 Cir. 4/13/22), 338 So.3d 497 (applying Rule 7, § 3 of the Rules of First City Court of the City of New Orleans and dismissing appeal as untimely).

[8] Indeed, this change in the trial judge was the reason for this Court's remand in *Whip's I*—the original judgment was signed by the new judge without any notation of that judge's successor status.

represented that he did not receive a copy of the judgment until April 2021 and that he timely filed a MNT in May 2021. The trial court ruled on the MNT and denied it without expressly addressing the timeliness issue.

Given these two changes coupled with the lack of any indication that the trial court found the MNT untimely, we cannot conclude, at this juncture, that the appeal is untimely.

*Dismissal without prejudice*

Another preliminary issue that we must address is the effect of the provision in the trial court's judgment that the dismissal of Contractors was "without prejudice." Mr. Jones claims that the effect of this provision is that the judgment is a legal nullity. Contractors counter that the judgment is valid; that a summary judgment dismissal is, by nature, a dismissal "with prejudice"; and that this court should amend the judgment to reflect that it was a dismissal "with prejudice."

Courts have recognized that "the very concept of granting summary judgment without prejudice is internally incoherent." *Rivera v. PNS Stores, Inc.*, 647 F.3d 188, 194-95 (5th Cir. 2011) (quoting *Poulos v. Reda*, 165 Ill.App.3d 793, 117 Ill. Dec. 465, 520 N.E.2d 816, 823 (1987)).[9] Simply stated, a summary

---

[9] Addressing the effect of a judgment stating that summary judgment was granted "without prejudice" and that indicated the grant "shall not be a bar for future actions," the court in *Poulos* observed:

> The concept of summary judgment "without prejudice" is inapposite. "Without prejudice" indicates that the suit is dismissed without a decision on the merits and is not conclusive of the rights of the parties. Summary judgment, on the other hand, is the procedural equivalent of a trial and is an adjudication of the claim on the merits. Thus, to grant summary judgment without prejudice is to say that although there has been an adjudication on the merits, it is not conclusive as to the rights of the parties. Similarly, to say that the grant of summary judgment "shall not be a bar to future actions" is logically inconsistent. When summary judgment disposes of the rights between the parties, either upon the entire

6

judgment is, by nature, a dismissal with prejudice. *Vega v. Wal-Mart Stores, Inc.*, 03-2239, pp. 2-3 (La. App. 1 Cir. 9/17/04), 888 So.2d 242, 243. The court in *Vega* observed the following:

> When summary judgment is proper, the resulting judgment is final, granting a party part or all of the requested relief. La. C.C.P. art. 968. The relief granted is final and not subject to revision by the trial court outside of new trial procedures. Just as it is erroneous to grant a dismissal without prejudice after a trial on the merits, it is erroneous to grant a dismissal without prejudice pursuant to the granting of a motion for summary judgment. By its nature the granting of summary judgment indicates that there is nothing left to determine and the law requires judgment be entered for one party. *Jackson v. State Farm Mutual Automobile Insurance Company*, 27611, pp. 4-5 (La. App. 2 Cir. 12/6/95), 665 So.2d 661, 664. The trial court erred in granting summary judgment without prejudice and we hereby amend the judgment to reflect a dismissal with prejudice.

I*d.*; *see also Estate of Blankenship v. Louisiana Home Care Grp., Inc.*, 49,856, p. 6 (La. App. 2 Cir. 6/24/15), 166 So.3d 461, 465 (appellate court amended "the judgments to provide that the claims against the doctors are dismissed with prejudice").

Given that a summary judgment "without prejudice" is a misnomer and that the proper remedy is for an appellate court to amend the judgment to reflect a dismissal "with prejudice," we find merit to Contractors' argument. But, given our decision to reverse and remand, we find it unnecessary to amend the judgment.

*Summary Judgment Principles and Standard of Review*

---

controversy or upon some definite and separate part thereof, as in the present case, it is a final order.

*Poulos*, 165 Ill.App.3d 793, 801–02; 520 N.E.2d 816, 822 (1987) (internal citations omitted).

This court recently outlined the governing summary judgment principles and standard of review as follows:[10]

- A ruling on a motion for summary judgment is reviewed using a *de novo* standard. *Planchard v. New Hotel Monteleone, LLC*, 21-00347, p. 2 (La. 12/10/21), 332 So.3d 623, 625 (citations omitted). An appellate court uses the same standards and rules as a trial court in deciding whether summary judgment is appropriate—"whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law." *Id.*, 21-00347, pp. 2-3, 332 So.3d at 625.

- Summary judgment "shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). The burden of proof on a summary judgment motion is governed by La. C.C.P. art. 966(D)(1), which provides for a shifting burden of proof.

- The summary judgment procedure is favored and shall be construed to "secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969." La. C.C.P. art. 966(A)(2). The summary judgment procedure is designed to decide if any genuine issue of material fact exists warranting a trial. *See Cutrone v. English Turn Prop. Owners Ass'n*, 19-0896, p. 7 (La. App. 4 Cir. 3/4/20), 293 So.3d 1209, 1214 (citation omitted).

- A genuine issue of fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on the issue, and the granting of summary judgment is appropriate. *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751 (citation omitted). A material fact is one that "might affect the outcome of the suit." *Id.* Whether a fact is material must be determined based on the applicable substantive law. *Roadrunner Transp. Sys. v. Brown*, 17-0040, p. 7 (La. App. 4 Cir. 5/10/17), 219 So.3d 1265, 1270 (citation omitted).

*Breaux v. Ochsner Clinic, LLC*, 23-0062, pp. 4-6 (La. App. 4 Cir. 9/29/23), ___

So.3d ___, ___, 2023 WL 6380062, *4-6.

*Genuine Issue of Material Fact as to Contractors' Liability*

---

[10] The Louisiana Legislature amended La. C.C.P. art. 966, effective August 1, 2023. The amendment to this article, however, is not applicable to this appeal.

8

On appeal, Mr. Jones contends that the trial court erred in finding no genuine issue of material fact as to Contractors' liability. Mr. Jones' claims against Contractors are tort claims—negligence under La. C.C. art. 2315,[11] and premises liability under La. C.C. art. 2317 and 2317.1.[12] Courts generally apply the duty-risk analysis in determining whether to impose liability under La. C.C. art. 2315. *Lemann v. Essen Lane Daiquiries, Inc.*, 05-1095, p. 7 (La.3/10/06), 923 So.2d 627, 633.[13] A premises liability claim is a form of negligence claim against an owner or custodian of property, which is governed by La. C.C. arts. 2317 and 2317.1.

---

[11] La. C.C. art. 2315(A) provides: "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

[12] La. C.C. Art. 2317 provides as follows:

> We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.

La. C.C. Art. 2317.1 provides as follows:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

Regarding La. C.C. art. 2317.1, this Court has recognized that "[t]he latter article is actually a form of negligence because it requires proof that the defendant have knowledge of the defect." *Gallina v. Hero Lands Co.*, 03-0331, p. 5, n. 3 (La. App. 4 Cir. 10/7/03), 859 So.2d 758, 762.

[13] The duty-risk analysis requires the plaintiff to establish all of the following five elements to prevail: (i) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (ii) the defendant owed a duty to the plaintiff; (iii) a breach of the duty; (iv) the defendant's substandard conduct was the legal cause of the plaintiff's injuries; and (v) damages. *Perkins v. Entergy Corp.*, 00-1372, 00-1387, 00-1440, p. 7 (La. 3/23/01), 782 So.2d 606, 611.

To establish a premises liability claim, a plaintiff is required to establish three elements: "1) that the thing was in the owner's or custodian's garde; 2) that the thing contained a vice or defect creating an unreasonable risk of harm; and 3) that the damage was caused by the vice or defect." *Alexander v. Hancock Bank*, 16-0662, p. 5 (La .App. 4 Cir. 2/8/17), 212 So.3d 713, 717 (citation omitted).[14]

In granting Contractors' summary judgment motion, the trial court found Mr. Jones lacked evidence that Contractors performed any work in the area of the junction box with the protruding wire. The same factual predicate was the basis for Contractors' two legal arguments in support of their summary judgment motions—that they owed no duty and thus could not be liable under a negligence theory;[15] and that they had no garde over the junction box and thus could not be liable under a premises liability theory.[16]

---

[14] Once the first three elements are established, the plaintiff is required to establish that the owner or custodian: (i) either knew or should have known of the ruin, vice, or defect which caused the damage; (2) could have prevented the damage by the exercise of reasonable care; and (3) failed to exercise such reasonable care. *Szewczyk v. Party Planners West, Inc.*, 18-0898, p. 7 (La. App. 4 Cir. 5/29/19), 274 So.3d 57, 62. "To recover, the plaintiff bears the burden of proving these elements in the affirmative, and the failure of any one is fatal to the case." *Id.*

[15] The threshold question in a negligence case of whether a defendant has a duty to the plaintiff is a legal one. *See Farrell v. Circle K Stores, Inc.,* 22-00849, p. 5 (La. 3/17/23), 359 So.3d 467, 471-72. Louisiana courts recognize that a contractor owes a duty to a third-party worker who is working on a job site to "exercise ordinary care and refrain from creating hazardous conditions in the fulfillment of its contractual obligations." *Broussard v. Gulfport Energy Corp.*, 18-840, p. 4 (La. App. 3 Cir. 6/5/19); 274 So.3d 613, 616–17 (quoting *Lyncker v. Design Engineering, Inc.*, 07-1522, p. 2 (La. App. 4 Cir. 6/25/08), 988 So.2d 812, 814). Contractors contend that they did not owe a duty to Mr. Jones—a worker on the jobsite—to protect against harm from the junction box because the junction box with the protruding wire was located outside the scope of their work.

[16] Although Contractors did not own the Property, the jurisprudence has recognized the reality that garde—a concept broader than ownership—may be shared by multiple parties. *See Dupree v. City of New Orleans*, 99-3651, p. 7 (La. 8/31/00), 765 So.2d 1002, 1009. The two-part test for determining garde is as follows: (i) whether the person bears such a relationship as to have the right of direction or control over the thing, and (ii) what, if any, kind of benefit the person derives from the thing. *Gallina v. Hero Lands Co.*, 03-0331, p. 5 (La. App. 4 Cir. 10/7/03), 859

On appeal, Mr. Jones contends that, contrary to the trial court's finding, the record reflects that he provided evidence that Contractors performed work in the area of the junction box with the protruding wire. Countering, Contractors attempt to divide the remodeling work on the Property between the pool and driveway work—performed by Paradise and in the area of the junction box with the protruding wire—and the other work on the Property—performed by Africk and Whip's and outside of the area where the junction box with the protruding wire was located.[17] Contractors emphasize that while Whip's did install an electrical subpanel for the pool contractor, this work was done on the left, rear corner of the main house in the alley. Contractors stress that this is the opposite rear corner of the house from where the junction box with the protruding wire was located—on the right, rear corner. We find the fine line that Contractors are attempting to draw regarding the scope of their work area is not supported by the summary judgment evidence.

Mr. Africk confirmed in his deposition that his company—Africk—was the general contractor on the renovation project. Mr. Africk also confirmed that Whip's performed the electrical work, which included running electricity from the main house to the new pool house (the former garage). Mr. Africk believed that

---

So.2d 758, 762. Contractors contend that their garde over the Property, if any, was limited to the scope of their work and thus did not extend to the junction box with the protruding wire.

[17] Notably, no mention is made of Keyes, which was working as a subcontractor for Africk. As noted, Mr. Jones was working for Keyes when the accident occurred.

the wires from the junction box were going to the garage and that the junction box was there before the work on the Property began.[18]

Mr. Whipple testified in his deposition that his company—Whip's—began working on the Property in February 2018 and that Whip's was on the jobsite at least twenty-two days before the May 2018 accident.[19] Mr. Whipple testified that most of Whip's pre-accident work was done inside the main house. Nonetheless, he acknowledged that Whip's was responsible for adding lights and an electrical outlet to the rear patio and for adding an electrical panel for the installation of the pool. Mr. Whipple stated that Paradise Pools had its own electrician who was responsible for tying in the electrical work for the pool with the subpanel that Whip's installed. In addition, Mr. Whipple testified that Whip's was responsible for running electrical wiring to the new pool house—the former garage.[20]

Mr. Browne, the homeowner, testified in his deposition that part of the remodeling work on the Property included running electrical power to the new pool house. He explained that electricity had to be run from the main house to the new pool house (former garage). He believed that the electricity for the new pool house was run under the new driveway. Mr. Browne confirmed that Whip's—

---

[18] As noted elsewhere in this opinion, Mr. Africk was not at the jobsite when the accident occurred but arrived shortly thereafter; he called Mr. Whipple, who arrived shortly thereafter and secured the junction box.

[19] Whip's completed the initial phase of its work thirteen days before the accident. As the next phase of its work was not scheduled to begin until after the date of the accident, neither Mr. Whipple, nor any employees of Whip's was present on the job site when the accident occurred.

[20] Whip's scheduling documents reflect that it performed the work in this area of the Property in March 2018, which was several weeks before the accident. The documents state: "[r]un pipe from outdoor panel to pool house for power."

acting as Africk's subcontractor—performed this electrical work. He also confirmed that Whip's performed additional exterior work, including "external floodlights and things of that nature, and presumably around the pool house."

As Contractors contend, Mr. Whipple testified that the work Whip's performed outside was done primarily on the "left corner of the house in the alley," which is the opposite corner of the house from the pillar on which the junction box with the protruding wire was located. But, Mr. Whipple confirmed that Whip's was responsible for running the electrical wire and pipe from the main house to the new pool house. Mr. Whipple explained that Whip's ran the electric wire and pipe in a trench that Africk dug to the new pool house. Mr. Whipple further explained that the wire and pipe were run in the trench "from the left rear of the house, and it went on an angle across the backyard to the edge of where the new pool house was going to be." The new pool house was located on the right, rear of the house—where the former garage was located. The pillar on which the junction box with the protruding wire was located was on the right, rear side of the house by the driveway.[21] Moreover, Mr. Browne testified that he believed electricity for the new pool house was run under the new driveway and that Whip's performed this electrical work.

In summation, we find the deposition testimony establishes that there is a genuine issue of material fact as to whether Contractors performed work in the area of the Property where the junction box with the protruding wire was

---

[21] We note that Mr. Jones was injured finishing a cement job on the rear patio of the house; he was working for Keyes, a subcontractor of Africk.

located—the right, rear corner of the house near the driveway. Contractors' attempt to divorce the work that they performed on the Property from the junction box with the protruding wire—merely because their job scope did not include the pool and driveway areas—is unpersuasive. Again, the fine line that Contractors attempt to draw regarding the scope of their work area is not supported by the summary judgment evidence. *See White v. Herbert*, 22-1333, p. 9 (La. App. 1 Cir. 6/2/23), 369 So.3d 898, 904 (observing that "in reviewing a motion for summary judgment, courts cannot make credibility determinations, evaluate testimony, or weigh conflicting evidence").

Accordingly, we find that the factual basis on which the trial court relied to grant Contractors' summary judgment—the lack of evidence that Contractors performed any work in the area of the junction box with the protruding wire—was erroneous. The trial court thus erred in granting Contractors' summary judgment motions.

## DECREE

For the foregoing reasons, the judgment of the trial court granting the separate summary judgment motions of Africk Construction, LLC, and Whip's Electric, LLC is reversed; and this matter is remanded for further proceedings.

**REVERSED AND REMANDED**