*584
 
 GAIDRY, J.
 

 |2In this case, a homebuyer appeals a trial court judgment dismissing his redhi-bition suit with prejudice. We affirm.
 

 Plaintiff, Richard Vanek, Jr., entered into an agreement to purchase a house from defendant, Gwendolyn Weiss Seeber. In this real estate transaction, Vanek was represented by his real estate agent, Lorna Evans, and Seeber was represented by her real estate agent, Joel Scott.
 
 [1]
 
 A property disclosure form was provided by See-ber to Vanek which disclosed no defects in the roof. The purchase agreement between the parties contained the following property inspection clause:
 

 PURCHASER ACKNOWLEDGES THAT THE PRICE OF THE PROPERTY WAS NEGOTIATED BASED UPON THE PROPERTY’S PRESENT CONDITION; ACCORDINGLY, SELLER IS NOT OBLIGATED TO MAKE REPAIRS TO THE PROPERTY, UNLESS OTHERWISE STATED HEREIN, AND PURCHASER HAS NO RIGHT TO DEMAND ANY REPAIRS, INCLUDING REPAIRS REQUIRED BY LENDER. THE SELLER IS RESPONSIBLE FOR MAINTAINING THE PROPERTY IN SUBSTANTIALLY THE SAME OR BETTER CONDITION AS IT WAS WHEN THE PURCHASE AGREEMENT WAS FULLY EXECUTED. PURCHASER shall have an inspection period of ten (10) calendar days, commencing the first day after acceptance of this agreement wherein, PURCHASER may, at his expense, have any inspections made by experts or others of his choosing. Such inspections may include, but are not limited to, inspections of or for termites and other wood destroying insects, and/or damage from same, molds, and fungi hazards, and analysis of synthetic stucco, appliances, structures, roof, heating, cooling, electrical, plumbing systems, square footage, existing leases (if applicable) and any items addressed in Seller’s Property Disclosure Document. SELLER agrees to provide the utilities for inspections. Upon completion of such inspections, PURCHASER must provide SELLER (or SELLER’S DESIGNATED AGENT) with a copy of all inspection reports which subsequently becomes the property of the seller. If PURCHASER is not satisfied with the present condition of the property as reflected in the inspection reports, PURCHASER (1) may elect, in writing, to terminate the Agreement to Purchase, or (2) must indicate in writing the deficiencies and desired remedies and SELLER will have 72 |3hours to respond in writing as to his willingness to remedy those deficiencies. Should SELLER refuse to remedy any or all of the deficiencies listed by the PURCHASER, then PURCHASER shall have 24 hours from the date of SELLER’S written response or 24 hours from the date that SELLER’S response was due, whichever is earlier, to: (1) accept SELLER’S response to PURCHASER’S written requests or (2) accept the property in its present condition, or (3) •to elect to terminate the Agreement to Purchase. PURCHASER’S response shall be in writing. Upon PURCHASER’S failure to respond by the time specified or Purchaser’s electing, in writing, to terminate the Agreement to Purchase, the Agreement shall be ipso facto Null and Void (except for return of deposit) and ALL PARTIES AGREE TO SIGN A CANCELLA
 
 *585
 
 TION WITHIN 24 HOURS ENTITLING THE PURCHASER(S) TO THE RETURN OF HIS DEPOSIT IN FULL, AND NEITHER PARTY SHALL THEREAFTER HAVE ANY FURTHER OBLIGATION TO THE OTHER. FAILURE BY EITHER PARTY TO SIGN THIS CANCELLATION SHALL NOT PROHIBIT EITHER PARTY FROM MAKING OR ACCEPTING OFFERS FROM OTHER PARTIES. FAILURE TO MAKE INSPECTIONS OR TO GIVE WRITTEN RESPONSE TO THE SELLER (OR SELLER’S DESIGNATED AGENT) AVITHIN THE INSPECTION PERIOD SHALL BE DEEMED AS ACCEPTANCE BY PURCHASER OF THE PROPERTY’S PRESENT CONDITION. PURCHASER shall have the right to reinspect the property within five (5) days prior to the Act of Sale, or occupancy, whichever will occur first in order to determine if the property is in the same or better condition as it was at the initial inspection(s).
 

 Vanek selected a home inspector, Paul Dileo, who was suggested to him by Evans. The Home Inspection Report provided by Dileo to Vanek states the following with regard to the roof inspection:
 

 The roof inspection is an opinion of the general condition of the roofing material. The inspector does not offer any warranty as to whether the roof leaks or may be subject to future leakage. The only way to determine the water tightness of a roof is to observe it during a prolonged period of heavy rainfall.
 

 Vanek did not get onto the roof with Dileo during the inspection. The inspection report contains the following findings about the roof:
 

 The roof cover is aging. Some typical indicators of aging (such as surface cracking, loss of granulation, shingles missing, and raised seams) were visible. The wear is consistent over the entire surface.
 

 |4[The] ventilation system appears to be marginal.
 

 The chimney appears to be in fair condition for a home of this age. It appears to be flashed properly and is secure to the structure. The cap shows normal signs of weathering and soot.... The Chimney appears to be rusting.
 

 Tree branches touching roof need removal.
 

 Chimney and gas vent are rusting and needs [sic] paint.
 

 Evidence of roof repairs.
 

 Missing shingles.
 

 ROOF APPEARS TO BE IN THE LAST PART OF ITS LIFE. ROOF APPEARS TO BE MARGINAL.
 

 Dileo’s inspection of the fireplace noted signs of leaks around the chimney flashing. No obvious leaks were noted during the inspection of the attic. Dileo’s report also stated that minor indications of elevated humidity levels were found inside the residence and noted that such humidity may be trapped within the residence by inadequate ventilation, ultimately condensating and resulting in the development of molds, mildew and fungi. Dileo noted leaking window frames and “some high moisture mildew” in a few windows.
 

 After going over the inspection report with Dileo and Evans and being informed that, under the terms of the inspection clause, he could either back out of the purchase agreement or request certain concessions from Seeber as a result of the problems found during the inspection, Va-nek filled out a Property Inspection Response form. In this response, he requested that Seeber reduce the price of the house by $4,000.00 due to the roof being in
 
 *586
 
 the “last stage of life.” Seeber declined to take $4,000.00 less, but instead offered to lower the price by $2,000.00. Vanek accepted this offer.
 

 The Act of Sale signed by the parties contained the following bolded language:
 

 |BIt is expressly agreed that the immovable property herein conveyed and all improvements and component parts, plumbing, electrical systems, mechanical equipment, heating and air conditioning systems, built-in-appliances, and all other items located hereon are conveyed by Seller and accepted by Purchase [sic] “AS IS, WHERE IS,” without any warranties of any kind whatsoever, even as to the metes and bounds, zoning, operation, or suitability of such properties for the use intended by the Purchaser, without regard to the presence of apparent or hidden defects and with the Purchaser’s full and complete waiver of any and all rights for the return of all or any part of the purchase price by reason of such defects.
 

 Purchaser acknowledges and declares that neither the Seller nor any party, whomsoever, acting or purporting to act in any capacity whatsoever on behalf of the seller has made any direct, indirect, explicit or implied statement, representation or declaration, whether by written or oral statement or otherwise, and upon which Purchaser has relied, concerning the existence or nonexistence of any quality, characteristic or condition or the property herein conveyed. Purchaser has had full, complete and unlimited access to the property herein conveyed for all tests and inspections which Purchaser, in Purchaser’s sole discretion, deems sufficiently diligent for the protection of Purchaser’s interest.
 

 Purchaser expressly waives the warranty of fitness and the warranty against redhibitory vices and defects, whether apparent or latent, imposed by Louisiana Civil Code Articles 2520 through 2548, inclusive, and any other applicable state or federal law and the jurisprudence thereunder.
 

 Purchaser also waives any right Purchaser may have in redhibition or to a reduction of the purchase price pursuant to Louisiana Civil Code Articles 2520 through 2548, inclusive, in connection with the property hereby conveyed to Purchaser by Seller. By Purchaser’s signature, Purchaser expressly acknowledges all such waivers, and Purchaser’s exercise of Purchaser’s right to waive warranty pursuant to Louisiana Civil Code Articles 2520 through 2548, inclusive.
 

 [[Image here]]
 

 Richard Jason Vanek
 

 After the Act of Sale, Vanek did not replace the missing shingles, remove the tree branches touching the roof, or address any other concerns raised in Dileo’s inspection report. Within a few weeks of the sale, during a rainstorm, Vanek discovered leaks in the roof. Upon further investigation, Vanek found that the leaks were running through the inside of the walls and |fihad damaged the floors and walls. He also discovered mold growing on the insulation. In addition to replacing the roof, Vanek replaced sheetrock, paneling, insulation, electrical wiring, and flooring.
 

 Vanek filed the instant suit in redhibition against Seeber and Scott, as well as Real Estate Partners, Inc. d/b/a ReMax Real Estate Partners, Inc., seeking recission of the sale or a significant reduction of the purchase price, as well as damages, including reimbursement of personal ex
 
 *587
 
 penses and labor,
 
 [2]
 
 and an unspecified amount for anxiety and mental distress incurred by the required renovations. Va-nek claimed that Scott and ReMax were liable in solido with Seeber because Scott, Seeber’s sister, was aware of the roof problems and misrepresented the condition of the roof to Vanek.
 

 A bench trial was held at which Seeber, Vanek, and Scott testified. Several of See-ber’s former neighbors and her sons also testified concerning whether or not Seeber and Scott were aware of roof problems prior to the sale. The court ultimately found that there was insufficient evidence regarding Scott’s knowledge, but that See-ber was probably aware of defects in the roof which she failed to note on the disclosure form. However, the court found that once the inspection report showed the roof system to be a problem, a reasonably prudent person under the circumstances “would have certainly made further inspections than the plaintiff did in this case.” The court found Vanek to have acted unreasonably as a purchaser when, instead of undertaking further investigation into the extent of the roof problem, he asked for a $4,000.00 reduction, accepted a $2,000.00 reduction, and signed the sale document agreeing to purchase the property “as is, where is” with a full waiver of redhibition. The court noted that under Louisiana Civil Code article 2521, a seller owes no warranty for defects that were known to the [ 7buyer at the time of the sale or that should have been discovered by a reasonably prudent buyer. In dismissing Va-nek’s petition, the trial court stated that although it appeared that Seeber knew the roof had problems and failed to disclose it on the disclosure form, “Once that inspection report showed what it did and the buyer did what he did, I don’t believe you can come in by claiming damages [based] on a disclosure form to get by what the law on redhibitory vices and [defects] states.”
 

 Vanek appealed, assigning the following trial court errors:
 

 1. The trial court erred in failing to find that Vanek’s consent to the waiver of redhibition was vitiated by Seeber’s fraud.
 

 2. The trial court erred in finding that Vanek could have discovered the defects upon a simple inspection.
 

 3. The trial court erred in failing to award damages to Vanek in redhibition where the seller had knowledge of, but failed to disclose, a hidden defect.
 

 4. The trial court erred in failing to find fraud or negligent misrepresentation by Seeber and Scott.
 

 5. The trial court erred in failing to award damages against Seeber and Scott for their failure to disclose.
 

 DISCUSSION
 

 Louisiana Civil Code article 2520 provides that a seller warrants the buyer against redhibitory defects in the thing sold. However, the seller owes no warranty for defects that were either known to the buyer at the time of the sale, or discoverable by a reasonably prudent buyer. La. C.C. art. 2521.
 

 A seller and buyer may agree to exclude the warranty against redhibitory defects; however, the terms of the exclusion must be clear and unambiguous and must be brought to the attention of the buyer. La. C.C. art. | s2548. The bolded language contained in the Act of Sale signed by Seeber was sufficient to waive redhibition. How
 
 *588
 
 ever, Vanek alleges that his consent to this waiver was vitiated by Seeber’s fraud. Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. La. C.C. art. 1953. Fraud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill. La. C.C. art. 1954. The fraud alleged by Vanek was Seeber’s failure to disclose knowledge of a roof defect on the property disclosure form. However, prior to Vanek agreeing to waive redhibition, he acquired knowledge of problems with the roof through Dileo’s inspection that contradicted Seeber’s answers on the disclosure form, and rather than investigating further, used the existence of the roof problems to negotiate a decrease in the purchase price. Once he moved in and began to experience leaks, he climbed onto the roof and observed some roof defects which were easily discoverable. He also hired a second inspector to check out the roof problems more closely after the roof began leaking, and this inspector discovered more roof problems. Considering the knowledge possessed by Vanek at the time he executed the waiver of redhibition, and the fact that he could have ascertained the truth by behaving as a reasonably prudent purchaser, it is simply not plausible that he relied on Seeber’s statement on the property disclosure form that there were no roof defects in waiving redhibition. In fact, the language of the waiver explicitly stated that Vanek was not relying on any representations made by any person in waiving redhibition and purchasing the property as is. This assignment of error is without merit.
 

 |aVanek’s next argument is that he could not have discovered the defects upon a simple inspection as the court suggested. While Vanek could not see the damage to the interior of the walls, he could certainly have discovered the defects in the house by behaving as a reasonably prudent purchaser. Vanek testified at trial that when he climbed up on the roof to investigate after the leaks started, he could see evidence of roof problems for himself. Also, Vanek stated that he noticed a hump in the flooring prior to purchasing the house, which ultimately turned out to be swollen wood from water damage. Vanek asked Dileo what the hump might be, and Dileo stated that he had no idea, and despite the fact that the inspection clause provided that Vanek had the right to conduct inspections of the structure, Vanek did not inquire further. It was only after the leaking started that he pulled back the carpet and discovered the swollen wood. Finally, armed with the knowledge concerning the roof given to him by Dileo, Vanek could have hired a second roof inspector to determine the full extent of the roof problems. As Vanek could have discovered the defects by behaving as a reasonably prudent purchaser, the defects are not redhibitory in nature. There is no merit to this assignment of error.
 

 Likewise, Vanek’s third assignment of error, that the trial court should have awarded damages for Seeber’s failure to disclose a hidden defect must fail because, as the trial court determined, and we agree, the defect was not hidden because it could have been discovered by a reasonably prudent purchaser.
 

 Vanek’s final arguments are that the court erred in failing to find that Seeber and Scott committed fraud or negligent misi'epresentation by failing to disclose roof problems of which they were aware and in failing to award damages for that misrepresentation. First, as noted by the trial court, the |, (¡evidence of Scott’s knowledge of roof defects was minimal. The
 
 *589
 
 court made a credibility call and chose to believe Scott’s testimony that she had no knowledge of the roof problems, and we find no manifest error in that finding. As for his claims against Seeber, as discussed above, Vanek was aware of problems with the roof, failed to investigate further, and expressly stated in the Act of Sale that he was not relying on any statements made by anyone in purchasing the property “as is” with a full waiver of redhibition. It is not plausible that he relied upon Seeber’s statement concerning the roofs condition in total disregard of all of the other information before him concerning the roof when purchasing the property. The trial court did not err in declining to award damages under these circumstances.
 

 DECREE
 

 The judgment of the trial court dismissing plaintiffs claims with prejudice is affirmed. Costs of this appeal are to be borne by plaintiff, Richard Vanek, Jr.
 

 AFFIRMED.
 

 [1]
 

 . Joel Scott is Gwendolyn Weiss Seeber's sister.
 

 [2]
 

 . Included in die expenses for which Vanek sought reimbursement was the replacement of the roof.