MAX N. TOBIAS, JR., Judge.
| jThe plaintiff, Charles Wells, was injured when he fell from a stage being built on the premises of St. Augustine High School Inc. (“St. Augustine”). Summary judgment was granted to St. Augustine relieving it of any liability for Mr. Wells’ fall. Mr. Wells has appealed, arguing that genuine issues of material fact exist, thereby rendering the summary judgment invalid. After reviewing the record and appli- ■ cable case law, we affirm the judgment by the trial court.
First held in 2009, the Edwin Hampton Music Festival (“Hamp Fest”) is St. Augustine’s largest non-profit fundraiser. To “produce” the 2011 event, St. Augustine called upon alumnus Kenny Chenier as the festival producer. As producer, Mr. Che-nier’s sole responsibility was to be the liaison with the artists who were scheduled to perform at the festival. In addition, St. Augustine hired another alumnus, Mike Biagas, d/b/a Magic Productions, to build the stage and physical structures for the event. Mr. Biagas confirmed that Mr. Chenier had no responsibility regarding the stage and its set-up. St. Augustine turned over all responsibility for building the stage and setting up the equipment to Magic Productions per written contract. Every witness admits that St. Augustine neither Lbuilt the stage nor had any control over it or the railings that allegedly caused Wells to fall.
In April 2011, Magic Productions entered into a formal written contract with St. Augustine for the production of Hamp Fest and to provide staging, sound, and lighting for the 30 September 2011 festival. The contract included a list of equipment and production services to be provided by Magic Productions, namely, a “1-32 X 32 X 4 mobile stage” and a “1-12 X 32 stage extension.” The contract also explicitly provided:
*3 Magic Productions shall at all times maintain control of the means, methods and personnel needed to fulfill its obligations for this event.
Mr. Biagas testified that, ultimately, when it came to the staging for the production, the “buck stops” with him.
Magic Productions subcontracted with Cypress Events Inc. (“CEI”) to supply and install the mobile stage, pursuant to its contract with St. Augustine. Keith Williams, the owner of CEI testified that CEI is a production company that provides services including any type of staging, lighting, and audio power for events. This includes providing and building stages. Williams testified that the only thing CEI was hired to do was to install the mobile stage. However, CEI may also have assisted in the building of a “stage extension,” from which Mr. Wells allegedly fell. Mr. Williams testified that Magic Productions was ultimately responsible for all construction.
Magic Productions also hired Corporate Lighting and Visual, Inc. to provide audio, video, and lighting equipment and the necessary labor for the event. Mr. Wells was employed by Corporate Lighting. Mr. Wells alleges that, while installing lights and electrical cables on the stage, he leaned against a railing that |sgave way, and he fell approximately five feet onto the asphalt parking lot thereby sustaining multiple injuries.
In St. Augustine’s La. C.C.P. art. 1442 deposition,'Suzanne Davidson, Director of Operations, stated that St. Augustine had no communications with either Magic Productions or CEI regarding how to set up the stage. St. Augustine also asserted that it had no direct communications with CEI or Corporate Lighting, and did not pay any money to them directly.
Mr. Biagas, on behalf of Magic Productions, testified that it hired CEI to provide and set up the mobile stage. He stated that CEI owned the mobile stage which was used, and he did not assist in the extension to the mobile stage where Mr. Wells fell. He testified that St. Augustine was “never” asked to supervise the building of the stage, and was not on-site to direct the building of the stage.
CEI, through Mr. Williams, testified that CEI - builds stages, delivered the “SC250” mobile stage at issue, and installed it for the Hamp Fest. Mr. Williams testified that Magic Productions was responsible for the “stage extension,” and that CEI did not build that portion of the stage, from which Mr. Wells fell. He further testified that Mr. Biagas was in charge of supervision and overseeing all construction insofar as the staging and that CEI never took any instructions from St. Augustine.
Mr. Wells himself testified that no employee of St. Augustine set up the stage or railing where he fell.
Thus, while there is a dispute as to whether Magic Productions or CEI built and/or had control over the stage, the stage extension, and the allegedly defective railing, no evidence exists that St. Augustine had control over the instrumentality that caused Mr. Wells’ injuries.
|4St. Augustine moved for summary judgment, stating that it contracted with Mr. Biagas, on behalf of Magic Productions, as an independent contractor to produce the event, including installation of the stage; it did not retain any operational control over the construction. St. Augustine argued that because the co-defendants and Mr. Wells have admitted that it did not build and/or supervise the construction of the stage where the accident occurred, St. Augustine could not be held liable as a matter of law for the plaintiffs alleged *4 injuries. Mr. Wells opposed the motion and filed a cross-motion for summary judgment against St. Augustine. The basis of the cross-motion was Mr. Wells’ assertion of the existence of a joint venture between St. Augustine and Magic Productions. St. Augustine opposed Mr. Wells’ motion.
On 26 November 2014, the trial court granted St. Augustine’s motion for summary judgment, and denied Mr. Wells’ cross-motion. The lower court also provided reasons for judgment. With respect to St. Augustine’s motion, the trial court wrote:
[Tjthe court granted this motion because defendant has established that there are no material issues of fact in dispute as to the independent contractor status of defendant, Mr. Biagas, d/b/a Majic [sic] Productions and defendant, St. Augustine High School, Inc., or that Mr. Che-nier, on behalf of the St. Augustine High School exercised garde over the construction of the stage.
In addition, the trial court denied Mr. Wells’ cross-motion. The trial court stated: “the court finds that plaintiff was unable to establish that any of the elements necessary for a joint venture were present.”
Mr. Wells devolutively appealed the judgment in favor of St. Augustine. Since the denial of Mr. Wells’ cross-motion is an interlocutory order, no appeal of ¡¡¡that ruling lies in the instant matter.[1] Mr. Wells has listed three assignments of error for our review. They are:
1.Whether the trial court erred by failing to consider whether Title 28, part CXV, Section 1501 of the Louisiana Administrative Code imposed an independent duty on appellee to inspect the safety of the stage and safety railing from which appellant fell, as a matter of law.
2. Whether the trial court erred in determining whether genuine issues of material fact existed with regard to whether appellant maintained garde and whether the Court should impose a duty on St. Augustine, as a matter of law, to keep the stage and safety railing from which appellant fell in safe condition, regardless of whether an independent contractor relationship existed as a matter of fact; or, alternatively, whether a material fact issue exists regarding the independent contractor relationship on the issues of “control” and “independence.”
3. Whether the trial court erred by substituting its own factual findings regarding the type of relationship between appellant and Biagas-as joint venturers or independent contractors-when that question should have been submitted to the jury.
We review a judgment on a motion for summary judgment de novo, using the same standard that the trial court uses in originally deciding the motion. Jones v. Buck Kreihs Marine Repair, L.L.C., 13-0083, p. 1 (La.App. 4 Cir. 8/21/13), 122 So.3d 1181, 1183, writ denied, 13-2260 (La. 12/2/13), 126 So.3d 1285.
Turning to Mr. Wells’ first assignment of error, we find it to be without merit. We find nothing in the law indicating that La. Admin.Code, tit. 28, pt. CXV applies to private educational institutions, such as St. Augustine.
As provided by La. Admin. Code, tit. 28, pt. I, § 301:
| (¡The Board of Elementary and Secondary Education is created as a body corporate. It shall supervise and con *5 trol the public elementary and secondary schools and special schools under its jurisdiction and shall have budgetary responsibility of all funds appropriated or allocated by the state for those schools, all as provided by law.
Further, as provided by La. Admin. Code, tit. 28, pt. CXV, § 101:
A. Policies passed by the Board of Elementary and Secondary Education (BESE) govern the operation of public elementary, middle, and secondary schools. Bulletin 7⅛1 — Louisiana Handbook for School Administrators, contains policies for the administration of public schools. [Emphasis supplied.]
Thus, as provided by BESE, the Louisiana Handbook for School Administrators cannot create a non-delegable duty on the part of St. Augustine, a private school.
In Mr. Wells’ second assignment of error, he asserts that St. Augustine maintained garde of the stage being built on its property. He contends that the trial court erred because it did not address the issue of garde or whether St. Augustine and Magic Productions shared a relationship of control over the stage. If one can answer “yes,” to the question of whether shared garde existed, then strict liability pursuant to La. C.C. art. 2317 would apply. However, even if evidence was present from which the trier of fact could find shared garde existed, La. C.C. art. 2317 would be applied to determine liability.
Article 2317 provides:
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.
Article 2317.1 provides, in pertinent part, the modification:
|7The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.
Thus, the plaintiff must prove three elements: (1) the defendant either owned or had care, custody, or control of the thing in question; (2) the thing was a cause-in-fact of the plaintiffs injuries; (3) the thing presented an unreasonable risk of harm. Gallina v. Hero Lands Co., 03-0331, pp. 4-5 (La.App. 4 Cir. 10/7/03), 859 So.2d 758, 762, citing Baker v. Murphy Oil USA, Inc., 01-1299, p. 5 (La.App. 4 Cir. 4/10/02), 816 So.2d 329, 332. In addition, pursuant to article 2317.1, the plaintiff must prove: (1) that the defendant knew or should have known of the vice or defect; (2) that the damage could have been prevented by the exercise of reasonable care; and (3) that the defendant failed to exercise such reasonable care. Gailey v. Barnett, 12-0830, p. 5 (La.App. 4 Cir. 12/5/12), 106 So.3d 625, 628, writ denied, 12-2761 (La.2/22/13), 108 So.3d 770.
In this instance, the parties agree that St. Augustine owned the property upon which the stage was being built. However, the courts have recognized the reality that custody or garde is a broader concept than ownership, and custody or garde may be shared by multiple parties. To determine whether custody or garde is shared, the courts look to the parties’ actions and relationships to the thing causing injury. The test for determining custody or garde is two-fold: (1) whether the person bears such a relationship as to have *6 the right of direction or control over the thing, and (2) what, if any, kind of benefit the person derives from the thing. Galli-na, 08-0331, at p. 5, 859 So.2d at 762, citing Dupree v. City of New Orleans, 99-3651, p. 7 (La.8/31/00) 765 So.2d 1002, 1009.
|sIn Morgan v. Bell, 10-0278, p. 3 (La.App. 4 Cir. 7/28/10), 44 So.3d 851, 853, we .stated:
The Supreme Court enumerated several factors for courts to consider in determining independent contractor status in Morales v. Davis Bros. Construction Co., 94-0902 p. 8 (La.App. 4 Cir. 12/15/94), 647 So.2d 1302, 1305: 1) whether there is a valid contract between the parties; 2) whether the work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it; 3) whether the contract calls for specific piecework as a unit to be done according to the independent contractor’s own methods without being subject to the control and direction of the principal; 4) whether there is a specific price for the overall undertaking; and 5) whether a specific time or duration is agreed upon and not subject to termination at the will of either side without liability for breach.
The defendants all agree that St. Augustine did not have the right of direction or control over the stage. This right was assigned by St. Augustine to Mr. Biagas d/b/a Magic Productions via a written contract, which, in turn, may have assigned the right of direction and control of the stage to CEI. Clearly, Magic Productions and CEI are pointing at each other as to which entity built and/or is responsible for the unsecured railing. However, both entities agree that St. Augustine is free from liability.
The contract itself specified that Magic Productions would “at all times maintain control of the means, methods and personnel needed to fulfill its obligations for this event.” Magic Productions was responsible for doing the work according to its own methods and without any control or direction from St. Augustine. The specific price of $25,000 was paid by St. Augustine to Magic Productions. Finally, the parties knew that Magic Productions had to complete its work by 30 September 2011, the date of Hamp Fest.
|gFurther, no evidence exists that St. Augustine knew or should have known of the defective railing or that it failed to exercise reasonable care. These responsibilities were assumed by Magic Productions and/or CEI.
It is undisputed that when the stage was being built, no one from St. Augustine was on site supervising the construction. In fact, the reason St. Augustine assigned the work to Magic Productions is that St. Augustine did not have the ability or expertise to do the job. Even Mr. Wells admitted in his deposition that, before the accident, he had no interaction with St. Augustine and that no St. Augustine representatives were present on site or had anything to do with installation of the safety railing. The mere fact that St. Augustine owns the property upon which the stage was being built is not enough to impose liability on it. We find this assignment of error to be without merit.
Finally, Mr. Wells alleges that the trial court erred by substituting its own factual findings regarding the type of relationship that existed between St. Augustine and Mr. Biagas, on behalf of Magic Productions — a joint venture or independent contractor — when that question should have been submitted to the jury. Again, we find this assignment of error to be merit-less.
*7 The contract that existed between St. Augustine and Magic Productions explicitly states that: “Magic Productions shall at all times control the means, methods, and personnel needed to fulfill its obligations . for this event.” In order to fulfill its obligations, it hired CEI to provide and build the stage. ' Magic Productions also hired Corporate Lighting, Mr. Wells’ employer. As for an alleged joint venture between St. Augustine and Magic Productions, we find that the requisite elements are not present to defeat the summary judgment granted in St. Augustine’s favor.
11flMr. Wells filed a cross-motion for summary judgment arguing that no issue of material fact existed to disprove a joint venture between St. Augustine and Magic Productions. He now, however, argues that the existence of a joint venture is a question of fact and that the trial court erroneously substituted its own factual findings concerning the relationship between the two parties. The trial court found that Mr. Wells did not prove all the elements of a joint venture; however, Mr. Wells put the issue squarely before the trial court.
 A joint venture, like a partnership, is a juridical person, distinct from its partners, created by an agreement between two or more persons to combine their efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial benefit. Broadmoor, LLC v. Ernest N. Mortal New Orleans Exhibition Hall Authority,. 04-0211, 04-0212, pp. 18-19 (La.3/18/04), 867 So.2d 651, 663. “Joint ventures arise only where the parties intended the relationship to exist, and they are ultimately predicated upon contract either express or implied.” Id., p. 19, 867 So.2d at 663.
No evidence exists that St. Augustine and Magic Productions intended to enter into a joint venture. We do not find that the parties shared a mutual risk for their common profit or commercial benefit. Magic Productions was paid the amount specified in the contract. The fact that Mr. Biagas may have charged St. Augustine less because he is an alumnus does not mean that the parties combined their efforts and/or resources. In addition, the contract fails to indicate that Magic Productions could incur any risk should Hamp Fest fail to be a success. Magic Productions was to receive $25,000 regardless of the outcome.
|nWe find that, regardless of the relationship between St. Augustine and Magic Productions, the contract clearly gave Magic Productions “control over the means, method, and personnel” to complete the contract. At no time did St. Augustine exercise any control over the construction of the stage, the extension, and/or the railings. For these reasons, we affirm the judgment of the trial court.

AFFIRMED.

. Mr. Wells did not seek writs from this court concerning the denial of his cross-motion.