MAX N. TOBIAS, JR., Judge.
hThe plaintiffs, Rene and Lindsay Louapre, appeal the trial court’s granting of summary judgment in favor of the defendants, William and Isabella Booher, dismissing the plaintiffs’ claims for damages, attorneys’ fees, and reimbursement of amounts incurred to remedy defects in the home they purchased from the Boohers. Finding no genuine issue of material fact exists and that summary judgment is warranted, we affirm.

Factual Background and Procedural History

The Louapres purchased the property located at 5529 South Johnson Street, New Orleans, Louisiana, from the Boohers on 2 October 2014 for $490,000.00. In connection with the sale and purchase of the property, the Boohers executed a property disclosure statement on 11 August 2014, which specified existing defects to the interior walls, windows, and exterior walls, but indicated that no defects existed with respect to the roof, pool, plumbing system, water piping, electrical, and heating and air conditioning systems.[1] The property disclosure statement ^further stated that the Boohers “attested that the ... statements and explanations ... are true and correct to the best of my/our knowledge.”
Thereafter, on 20 August 2014, the Louapres submitted a signed Agreement to Buy the Boohers’ property, which agreement the Boohers accepted; the Agreement contained the following language, in pertinent part:
INSPECTION AND DUE DILIGENCE PERIOD: BUYER ACKNOWLEDGES THAT THE SALE PRICE OF THE PROPERTY WAS NEGOTIATED AND BASED UPON THE PROPERTY’S APPARENT CURRENT CONDITION; ACCORDINGLY, SELLER IS NOT OBLIGATED TO MAKE REPAIRS TO THE PROPERTY, INCLUDING REPAIRS REQUIRED BY THE LENDER UN *1046 LESS OTHERWISE STATED HEREIN. THE SELLER IS RESPONSIBLE FOR MAINTAINING THE PROPERTY IN SUBSTANTIALLY THE SAME OR BETTER CONDITION AS IT WAS WHEN THE AGREEMENT WAS FULLY EXECUTED. PURCHASER shall have an inspection and due diligence period of (15) calendar days, commencing the first day after acceptance of this Agreement wherein, BUYER may, at BUYER’S expense, have any inspections made by experts or others of his choosing. Such physical inspections may include, but are not limited to, inspections for termites and other wood destroying insects, and/or damage from same, molds, and fungi hazards, and analysis of synthetic stucco, drywall, appliances, structures, foundations, roof, heating, cooling, electrical, plumbing systems, utility and sewer availability and condition, outbuildings, and square footage. Other due diligence by BUYER may include, but is not limited to investigation into ... any items addressed in the SELLER’S Property Disclosure Document. All testing shall be nondestructive testing. SELLER agrees to provide the utilities for inspections and immediate access. If BUYER is not satisfied with the condition of the Property or the results of BUYER’S due diligence investigation, the BUYER may choose one of the following options within the inspection and due diligence period:
Option 1: BUYER may elect, in writing, to terminate the Agreement and declare the Agreement null and void; or
Option 2: BUYER may indicate in writing the deficiencies and desired remedies and SELLER will |awithin seventy two (72) hours respond in writing as to SELLER’S willingness to remedy those deficiencies (“SELLER’S Response”).
Should SELLER in the SELLER’S Response refuse to remedy any or all of the deficiencies listed by the BUYER, then BUYER shall have seventy-two (72) hours from the date of SELLER’S Response or seventy-two (72) hours from the date that SELLER’S Response was due, whichever is earlier, to: (a) accept SELLER’S Response to BUYER’S written requests or (b) accept the Property in its current condition, or (c) to elect to terminate this Agreement. BUYER’S response shall be in writing. Upon BUYER’S failure to respond to the SELLER’S Response by the time specified or BUYER’S electing, in writing, to terminate this Agreement, the Agreement shall be automatically, with no further action required by either party, ipso facto null and void except for return of Deposit to the BUYER.
FAILURE TO GIVE WRITTEN NOTICE OF EITHER TERMINATION OR DEFICIENCIES AND DESIRED REMEDIES TO SELLER (OR SELLER’S DESIGNATED AGENT) AS SET FORTH ... WITHIN THE INSPECTION AND DUE DILIGENCE PERIOD SHALL BE DEEMED AS ACCEPTANCE BY BUYER OF THE PROPERTY’S CURRENT CONDITION.

FINAL WALK THROUGH:

BUYER shall have the right to re-inspect the Property within five (5) days prior to the Act of Sale, or occupancy, whichever will occur first in order to determine if the Property is in the same or better condition as it was at the initial inspection(s) and to insure all agreed upon repairs have been completed. SELLER agrees to provide utilities for the final walk through and immediate access to the Property. [Emphasis in original.]
*1047 The Louapres seized the afforded opportunity for an inspection and engaged a licensed Louisiana home inspector, Gurtler Brothers Consultants, Inc. (“Gurtler”), to inspect the property on 26 August 2014. Two days later, Gurtler issued a 52-page report that included 82 photographs (“Report”), identifying several deficiencies in the Boohers’ property. Specifically, the Report delineated | ¿major deficiencies that might require additional investigation and identified several safety concerns, including issues involving the structure, heating and air conditioning system, exterior and interior conditions, basement, roof and gutters, and the plumbing. The following items are only some of the deficiencies noted in the Report prepared for the Louapres:
1.Structural

Compression and wood rot was noted at the top of the left and right posts of the rear patio, which is indicative of chronic leakage and hidden damages.

[2]

Minor moisture stains and damages, apparently from previous roof leaks, were noted at some of the attic framing and roofing sheathing boards.
Minor to moderate damages, which also are not structurally detrimental, were noted at some of the foundation sills, floor joists, and sub-flooring in various areas of the crawlspaee.
Evidence of moisture build-up and some fungus growth, due to inadequate ventilation, was noted in the crawlspaee.
[T]he basement had a strong dead animal odor .... The basement is below grade and is prone to moisture intrusion in our area.
2.Roofing and Gutters
Our inspection has certain limitations with respect to ascertaining the quality of the installation and the condition of the roofing materials, and we recommend that a licensed roofing contractor walk the roof and remove a few tiles to provide additional evaluation. We noted missing tiles and ridge caps at left side of the gable [roof].
We noted a few areas of previous leaks, apparently from the prior roof. The condition of the underlying felt paper could not be ascertained during this inspection. However, numerous areas of previous leakage indicate \ ¡that this roof has little remaining useful life.... Edges of the roof have separated from the flashing. Roofing tar has been applied in numerous areas.... We strongly recommend that this tar sealant be replaced with proper metal flashing .... These roofing materials ... are at the end of their useful service life. We recommend a licensed roofer be consulted for repair options.... The functionality of the subsurface drainage system could not be confirmed during this visual inspection.
3.Exterior Conditions
Considerable wood rot was noted at the trim, soffits, fascia, windows and doors.... Several areas of the siding are rotted through, which again alloivs moisture into the wall cavity. Many of the door trims also have considerable rot at the base.
The in-ground swimming pool and the associated equipment are not included in this inspection report and can be addressed by a pool service company if desired.
*1048 4.Interior Conditions

Water is located, in a cavity below a trap door in the utility room. A source was not apparent.

The basement had a notable dead animal odor.

We noted numerous areas of past leaks on the ceilings below the flat roofs.

Numerous rear and left doors have evidence of past moisture intrusion.

The vapor barrier at a dining room window is broken.

Given the age of the house and its windows, the window vapor barrier seals are aged and can fail at any time allowing condensation build up between the mndow panes.

5. Plumbing
We noted a drum trap at the drain piping at a few of the bathrooms. This type of trap is subject to clogging and leakage, and we recommend that this drum trap be replaced.

The rear sink in the hall bathroom drained slowly.

InMuch of the plumbing is underground or behind walls and it’s not visible for inspection. The condition of the underground drain lines also could not be evaluated during this visual inspection. We recommend that a video camera survey of the underground drain lines be performed to ascertain the condition of the pipes below the slab.
6. Electrical

A signiñcant past short was noted at a main wire for the utility room sub-panel, We strongly recommend that a licensed electrician evaluate the electrical system.

The number of circuits and properly grounded outlets is inadequate by today’s standards.

The left rear comer outlet in the second floors left front bedroom testes as inoperable.

Many of the second floor outlets are grounded type outlets that tested as ungrounded,
7.Heating and Air Conditioning

The overflow drain pan under the second floor evaporator coil is holding standing water, which indicates that the main condensate drain line is blocked. We recommend that the drain line be cleared of obstructions and the pan drained to prevent damages to the interior surfaces below.

The operation of this float switch [to the second floor central system] could not be confirmed during this inspection.
We noted that there is no float switch installed at the first floor central system, which makes this system susceptible to overflowing when the main and overflow condensate drain lines become obstructed. We recommend that a float switch be installed at this system to reduce the potential for damages to the interior surfaces below. Condensation was noted at some of the second floor registers, which is indicative of elevated humidity in the house.
Apparent mold growth was noted at the exterior of the evaporator coils and at some of the ceiling registers. We recommend having the system cleaned 17professionally to reduce the concentrations of mold inside the system.
11. Summary
We recommend that firm quotations from licensed contractors be obtained *1049 for repairs to the above items. [Emphasis in original.]
Several of the deficiencies detailed in the Report of Gurtler directly contradicted information previously provided by the Boo-hers in the property disclosure statement they completed concerning the condition of the property, specifically regarding the roof, plumbing, electrical, and heating and air conditioning as noted above.
Following receipt and review of the Report, and despite the numerous deficiencies identified therein, which conflicted with the Boohers’ property disclosure statement, and having notice of the option to terminate the Agreement to Buy, the Louapres submitted a written Property Inspection Response to the Boohers on 2 September 2014 requesting that, “[f]or all of the deficiencies listed,” including issues concerning the roof, the Boohers pay $7,500 towards the closing costs to remedy the noted deficiencies. In response, the Boohers offered to pay a total of $5,000, with the stipulation that the payment be a “full and complete payment for the cost to BUYER(S) of having said deficiencies corrected after the date of the Act of Sale (even if the actual cost is more or less than the stated sum).” The Louapres accepted the Boohers’ $5,000 offer in response to the request. Accordingly, the parties executed a written addendum to the 20 August 2014 Agreement to Buy to this effect.[3] Subsequently, on 25 September 2014, the IsLouapres negotiated with the Boohers for an additional $1,500 credit to address another leak issue resulting in a second addendum to the original Agreement to Buy. As a result of the numerous deficiencies identified in the property—which deficiencies were identified to the Louapres after receiving the initial property disclosure statement submitted to them by the Boo-hers, but before the act of sale—the parties negotiated a total credit of $6,500 to the Louapres for “pre-paids and closing costs” to remedy the- deficiencies.
On 2 October 2014, the parties executed a cash sale for the property in accordance with the Agreement to Buy as amended. Additionally, in an addendum attached to the cash sale that was expressly made a part thereof, the Louapres executed a separate “Waiver of Warranty and Redhibition Rights,” which contained the following language:
It is expressly agreed that the immovable property herein conveyed and all improvements and component parts, plumbing, electrical systems, mechanical equipment, heating and air conditioning systems, built-in appliances, and all other items located hereon are conveyed by Seller and accepted by Purchaser “AS IS, WHERE IS,” without any warranties of any kind whatsoever, even as to the metes and bounds, zoning, operation, or suitability of the property for the use intended by the Purchaser, without regard to the presence of apparent or hidden defects and with the Purchaser’s full and complete waiver of any and all rights for the return of all or any part of the purchase price by reason of any such defects.
Purchaser acknowledges and declares that neither the Seller nor any party, whomsoever, acting or purporting to act in any capacity whatsoever on behalf of the Seller has made any direct, indirect, explicit or implicit statement, representation or declaration, whether by written or oral statement or otherwise, and upon which the Purchaser *1050 has relied, concerning the existence or non-existence of any quality, characteristic or condition of the property herein conveyed. Purchaser has had full, complete ad unlimited access to the property herein conveyed for all tests and ^inspections which Purchaser, in Purchaser’s sole discretion, deems sufficiently diligent for the protection of Purchaser’s interests.
Purchaser expressly waives the warranty of fitness and the warranty against redhibitory vices and defects, whether apparent or latent, imposed by Louisiana Civil Code Articles 2520 through 2548, inclusive, and any other applicable state or federal law and the jurisprudence thereunder.
Purchaser also waives any rights Purchaser may have in redhibition to a return of the purchase price or to a reduction of the purchase price paid pursuant to Louisiana Civil Code Articles 2520 to 2548, inclusive, in connection with the property hereby conveyed to Purchaser by Seller. By Purchaser’s signature, Purchaser expressly acknowledges all such waivers and Purchaser’s exercise of Purchaser’s right to waive warranty pursuant to Louisiana Civil Code Article 2520 and 2548, inclusive. [Emphasis supplied.]
Shortly after moving into their newly purchased home, the Louapres allege that, contrary to the representations made to them by the Boohers in the property disclosure form of August 2014, they began discovering several defects—defects to which they allude to having had no prior knowledge—in the “roof, ceiling, plumbing system, water piping, pool, and heating and cooling systems.” Unable to amicably resolve the issues with the Boohers, the Louapres filed the instant suit in redhibition seeking damages, attorneys’ fees, and reimbursement of amounts incurred to remedy defects in the home after the sale. No mention of the Report is made in the petition.
In response to the Louapres’ petition, the Boohers filed an exception of no cause of action or, alternatively, motion for summary judgment on the grounds that (1) the Louapres had actual knowledge of many of the deficiencies in the home that were outlined in the Report prior to signing the act of sale and, (2) despite having actual knowledge of the defects, the Louapres executed a waiver of |tnwarranty and redhi-bition rights at the time of the cash sale, thus, precluding any right to recover the damages claimed in their lawsuit.
The Boohers’ motion for summary judgment came for hearing on 20 November 2015. Finding that no genuine issue of material fact existed and that, as a matter of law, the Louapres could not maintain a claim for redhibition against the Boohers, the trial court granted summary judgment in favor of the Boohers dismissing the Louapres’ claims. A judgment to this effect was signed on 1 December 2015. The judgment was silent as to the issue of costs.
The Louapres devolutively appealed. The Boohers answered the appeal asserting damages for frivolous appeal, including attorneys’ fees and costs pursuant to La. C.C.P. art. 2164.[4]

Discussion

Appellate courts review the granting of summary judgment de novo using the same criteria governing the trial court’s consideration of whether summary judgment is appropriate. Wells v. St. Augus *1051 tine High School, Inc., 14-0234, p. 5 (La. App. 4 Cir. 9/3/14), 150 So.3d 1, 4.
On appeal, the Louapres contend the Boohers are not entitled to summary judgment because (1) in Valobra v. Nelson, 14-0164 (La.4/11/14), 136 So.3d 793, the Supreme Court pronounced that if a seller represents on a property disclosure form -that no defects in the property exist, the buyer has a right to rely on those representations and is not then required to show that the seller had actual knowledge of the defects to recover in redhibition, and (2) the Boohers’ motion for [^summary judgment was premature as discovery had not commenced at the time the motion was filed.
Conversely, the Boohers argue that the defects about which the Louapres complain are not redhibitory because the Louapres had actual knowledge of the defects prior to purchasing the home as outlined in the Report prepared at their request and on their behalf, which identified numerous major deficiencies in the property. Further, the Boohers note that the Louapres actually negotiated a credit to the closing costs ns a result of the property defects identified, establishing they had actual knowledge of the defects prior to the sale and, as such, cannot recover. Alternatively, the Boohers maintain that even if the defects are redhibitory, the Louapres still cannot recover because they signed a valid, express waiver of their rights to redhibition and to rely on any prior representations made by the Boohers concerning the current condition of the property. Moreover, according to the Boohers, the Louapres presented no countervailing evidence to refute that they had actual knowledge of numerous defects in the property, which knowledge contradicted the representations previously made by the Boohers in the property disclosure form. Lastly, the Boohers argue that any allegation that the motion for summary judgment was premature because discovery was not complete lacks merit because, based on the indisputable facts, including (1) the Report, (2) the credit to the closing costs, and (3) the express waiver of redhi-bitory rights and reliance on the Boohers’ prior representations, no additional discovery in this matter would alter the outcome of this case.
Finding the Louapres’ reliance on Vaio-bra as dispositive of the instant case is misplaced and finding merit to the arguments asserted by the Boohers, we affirm 112the trial court’s grant of summary judgment in favor of the Boohers and the dismissal of the Louapres’ claims.
Louisiana Civil Code article 2520 provides that a seller warrants the buyer against redhibitory defects in the thing sold. In a redhibitory action, the plaintiff must prove that the thing sold contained a hidden defect before the sale that was not apparent upon ordinary inspection. Tucker v. Petroleum Helicopters, Inc., 08-1019, p. 15 (La.App. 4 Cir. 3/23/09), 9 So.3d 966, 975. Pursuant to La. C.C. art. 2521, the seller owes no warranty for defects that were known to the buyer at the time of the sale or for defects that should have been discovered by a reasonably prudent buyer. Thus, apparent defects, which the buyer can discover through a simple inspection, are excluded from the seller’s legal warranty. La. C.C. art. 2521; Royal v. Cook, 07-1465, p. 8 (La.App. 4 Cir. 4/23/08), 984 So.2d 156, 163.[5] If a defect is apparent *1052 and could have been discovered by simple inspection, a buyer has a duty to make a further investigation; the failure to do so constitutes a waiver of any complaint of a redhibitory defect. Spraggins v. Lambeth, 42,693, p. 5 (La.App. 2 Cir. 12/5/07), 973 So.2d 165, 168.
The Louapres posit that the Supreme Court’s decision in Valobra mandates the reversal of the trial court’s grant of summary judgment. We disagree. In Valo-bra, the plaintiffs brought a redhibition action against the sellers after discovering redhibitory defects, alleging fraudulent inducement and intentional | ^misrepresentation.[6] The matter came before the trial court on the sellers’ exception of no cause of action, which the trial court granted finding that the plaintiffs’ petition failed to assert that the sellers had actual knowledge of the alleged defects and, thus, failed to state a cause of action to challenge the validity of the redhibition waiver the plaintiffs signed at the time of the sale. The court of appeal, relying on La. C.C. art. 2548,[7] sustained the sellers’ exception stating that the plaintiffs were required to plead the sellers’ actual knowledge of defects. Valobra, 14-0164, p. 2, 136 So.3d at 794. In a per curiam opinion, relying solely on the four corners of the petition and accepting all well-pleaded facts set forth by the plaintiffs therein as true, as is required on an exception of no cause of action, the Supreme Court reversed the lower court judgments stating that because the plaintiffs specifically alleged that the sellers had obtained the waiver of redhibition by fraud, it could not be presumed “otherwise effective.” Id., 14-0164, p. 3, 136 So.3d at 795. Accordingly, the court determined the plaintiffs had effectively stated a cause of action to challenge the validity of the waiver and were entitled to litigate that threshold issue, which would then “determine the proof required of them on their redhibition claim.”[8] Id.
luIMike Valobra, the instant case involves a motion for summary judgment and the issue presented is not whether, based solely upon the four corners of their petition and accepting all of the allegations contained therein as true, the Louapres have stated a cause of action in redhibition, but rather, whether the Louapres can prevail on their stated claim for redhibition based upon the undispúted facts established by the evidence submitted on the *1053 motion for summary judgment. Additionally, in Valobra, the court was not able to consider: (1) evidence of a written inspection report provided to the plaintiffs prior to the sale that detailed alleged defects in the property and/or recommended additional investigation of possible defects in the property; (2) photographs provided to the plaintiffs depicting defects in the property; or (3) evidence of negotiations between the parties for a reduction in the purchase price to remedy the noted defects in the property—all of which were made available for the court’s consideration and review in the instant case. In short, the per curiam opinion in Valobra stands solely for the proposition that a cause of action had been stated; it does not address whether summary judgment was applicable. Accordingly, we find the Louapres’ reliance on Valobra in the case sub judice is misplaced and unavailing.
In the case of Royal v. Cook, supra, the plaintiff, in part, alleged redhibitory defects in a house’s water heater, air conditioner, dishwasher, carpet, kitchen, plumbing, backyard swing, and living room wall. Based upon the evidence presented, the trial court concluded that these items did not constitute redhibitory defects in the home because the plaintiff either had, or should have had, notice of 11sthese defects from the pre-sale inspection of the home. This court did not disturb that finding on appeal. Given the pre-sale inspection prepared on behalf of the Louapres in the instant case, we reach the same conclusion herein.
Moreover, in a case factually analogous to the case sub judice⅛[9] our brethren on the First Circuit in Vanek v. Seeber, 09-0066 (La.App. 1 Cir. 10/27/09), 29 So.3d 582, determined that defects in the roof of the home did not constitute redhibitory defects because the buyer could have discovered them had he acted as a reasonably prudent buyer. Specifically, while the seller had completed a property disclosure form “which disclosed no defects in the roof,” a subsequent home inspection reported that the roof was aging and noted that it appeared to be in the last part of its life. After going over the inspection report and being advised that he could either terminate the purchase agreement or request concessions from the seller as a result of the deficiencies noted in the report, the buyer opted to seek a $4,000 reduction in the purchase price of the house. After negotiating with the seller, the buyer accepted the seller’s offer to lower the price by $2,000. Thereafter, in connection with the act of sale, the buyer executed a waiver of redhibition and the right to rely on any statements made by anyone, includinfe the seller, during the purchase of the home. Following the sale, the buyer discovered a leak in the roof during heavy rainfall. Consequently, the buyer filed suit against l1Rthe seller in redhibition seeking rescission of the sale or a significant reduction of the purchase price due to the seller’s failure to disclose problems with- the roof. In determining that the buyer was not entitled to recover in redhi-bition, the court noted that even though the statements made in the property dis *1054 closure form completed by the seller indicated no defects in the roof existed, the buyer had acquired or should have acquired knowledge of the problems with the roof from the information contained in the property inspection report prior to executing the waiver of redhibition.
Like the buyer in Vanek, based upon the information contained in the Report prepared and presented to the Louapres after receipt of the property disclosure form given to them by the Boohers and prior to the act of sale, which Report identified numerous defects and recommended additional investigation and/or inspection of various areas of the Boohers’ home, we find that the Louapres either knew or should have known of the defects about which they now complain and seek redress. Additionally, we find the Louapres failed to act as a reasonably prudent purchaser by not conducting any further inspection or investigation of the property as recommended prior to the act of sale. Further, the undisputed summary judgment evidence establishes that after receiving the Report identifying numerous defects, rather than seek to terminate the Agreement to Buy, the Louapres opted to negotiate a $6,500 credit towards the closing cost and acknowledged in writing that this sum was a “full and complete payment” for the cost to repair and/or remedy the defects after the act of sale, even if the actual cost they incurred was more or less than the negotiated amount. We find the totality of the summary judgment evidence presented in this case mandates a finding that the Louapres either actually knew, or should have known of the alleged defects in the property prior to the act 117of sale. Pursuant to La. C.C. art. 2521, the defects about which the Louapres complain are excluded from the seller’s legal warranty and, consequently, the trial court properly granted summary judgment in favor of the Boohers dismissing the Louapres’ claim for redhibi-tory damages.
As further evidence that summary judgment was proper in this case, we note that the Louapres executed an addendum made a part of the act of sale expressly waiving their right to redhibition and to rely on any representation made by the Boohers. See La. C.C. art. 2548, which allows the parties to agree to an exclusion or limitation of warranty against redhibitory defects. The Louapres do not dispute that a pre-sale property inspection was completed resulting in the Report provided to them and which identified numerous defects in the property or that they negotiated a credit towards the closing cost to remedy those deficiencies. The Louapres also do not contest that, despite their knowledge of the defects, they executed the waiver addendum at the act of sale. This waiver, in addition to waiving their right to redhibition, waived the Louapres’ right to rely on any representations concerning the condition of the property made by the Boohers in connection with the sale, which we find included the statements made by the Boohers in the property disclosure form. Given the extensive findings contained in the Report, especially those findings that conflicted with the Boohers’ statements contained in property disclosure form, and the recommendations for further investigation and/or inspection, we do not find it either logical or reasonable that the Louapres would have relied on the statements made by the Boohers in the property disclosure form. Summary judgment was proper.
Lastly, we find the Louapres’ contention that summary judgment was improper on the basis that discovery was not yet complete to be without merit. AsJ^stated by the trial judge at the hearing on the motion, we are “not sure what additional discovery [the Louapres] need” that would *1055 change the outcome of this case. This assignment of error is meritless.
Though we do not find the appeal of this matter to be frivolous, we tax all costs of the trial and appellate court proceedings to the Louapres. La. C.C.P. art. 2164.
CONCLUSION
For the foregoing reasons, the summary judgment in favor of the defendants, William and Isabella Booher, dismissing the claims of the plaintiffs, Rene and Lindsay Louapre, is affirmed at the plaintiffs’ cost.
AFFIRMED; COSTS TAXED.

. In Section 6 of the property disclosure statement, the Boohers indicated that property damages related to "the land or the improvements thereon, including, but not limited to, fire, windstorm, flood, hail, lightning or other property damage” that had occurred, and stated that "all related property damages, defects, and/or conditions” caused as a result thereof had not been repaired.

. According to the Report, "[m]ajor deficiencies are underlined. Items that may he a major deficiency or that require additional investigation are italicized. Safety concerns are identified iri bold print.” [Emphasis in original.].

. The addendum provided the "[s]eller to pay five thousand dollars ($5000) towards buyers’ closing costs and pre-paids. All other conditions in purchase agreement to remain the same,”

. La. C.C.P. art. 2164 provides that an appellate court may ‘‘tax costs of the lower or appellate court or any part thereof, against any party to the suit, as in its judgment may be considered equitable.”

. Section (b) of the Revision Comments following La. C.C. art. 2521 states that ‘‘a defect, or vice, is redhibitory when it is hidden, that is, not apparent, nor known to the buyer. Thus, a defect is not hidden, and therefore is not redhibitory, when the buyer knows of it either because it was disclosed by the seller or because the buyer discovered it by himself." *1052 A seller is not required to respond for defects which the buyer was aware, irrespective of the gravity of the defects. See Revision Comment (f) following La. C.C. art. 2521.

.In their petition, the plaintiffs alleged that the "Defendants failed to advise the plaintiffs that they were not in a position to know one way or the other whether the premises contained defects and thus intentionally misled the plaintiffs into believing the defendants executed the disclosure form with knowledge of that which they stated. [That no defects in the premises existed.]” The plaintiffs further alleged the sellers were in bad faith and that they fraudulently induced them to execute a waiver of redhibition by misrepresenting in the property disclosure form the degree and quality of their knowledge of the premises. Valobra, 14-0164, pp. 1-2, 136 So.3d at 794.

. La. C.C. art. 2548 provides, in pertinent part, that "[a] buyer is not bound by an otherwise effective exclusion or limitation of the warranty when the seller has declared that the thing has a quality that he knew it did not have.”

. In dicta, the court stated its belief that "a seller cannot represent a thing to have no defects in order to procure a waiver of redhi-bition and then claim that they were not in a position to know whether there were defects or not, as alleged by the plaintiffs, while using the waiver of redhibition to require the buyer to prove actual knowledge of the defect by the seller rather than merely that the thing sold contained a defect which rendered it useless.” Valobra, 14-0164, p. 2, 136 So.3d at 795.

. Both the purchase agreement and the Act of Sale at issue in Vanek v. Seeber, 09-0066 (La.App, 1 Cir. 10/27/09), 29 So.3d 582, contained almost identical language as the same documents at issue in the instant case. Additionally, the sellers in both cases prepared property disclosure statements containing information concerning the condition of the property they were selling that was later contradicted by the pre-sale inspection reports. Further, the buyer in Vanek, like the Louapres herein, with knowledge that the property disclosure form- and the pre-sale inspection report contained conflicting information regarding the condition of the property, expressly waived the right to assert redhibition and the right to rely on any representations made by the seller,